No. 13-2348

# United States Court of Appeals for the Fourth Circuit

LEE GRAHAM SHOPPING CENTER, LLC,

*Plaintiff-Appellee,*

*and*

LEE GRAHAM SHOPPING CENTER LIMITED PARTNERSHIP; PAUL V. ZEHFUSS; SITTA M. ZEHFUSS; NICOLE M. ZEHFUSS; PAUL H. ZEHFUSS; and T. EUGENE SMITH,

*Third Party Defendants-Appellees*

*v.*

WAYNE CULLEN, As Personal Representative of the Estate of Diane Z. Kirsch and Trustee of the Diane Z. Kirsch Family Trust and Trustee of the Separate Trust for the Benefit of Wayne Cullen,

*Defendant/Counter Plaintiff-Appellant.*

*On Appeal from the United States District Court for the Eastern District of Virginia in No. 1:13-CV-00189-LO-TCB (Hon. Liam O'Grady, Judge)*

## BRIEF FOR APPELLANT

Roger A. Hayden, II, Esq.
Nathan S. Brill, Esq.
PASTERNAK & FIDIS, P.C.
7735 Old Georgetown Road
Suite 1100
Bethesda, MD 20814
Telephone: (301) 656-8850
Facsimile: (301) 656-3053
rah2@pasternakfidis.com
nbrill@pasternakfidis.com

*Counsel for Appellant*

JANUARY 29, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2348__    Caption: __Lee Graham Shopping Center, LLC, et. al v. Estate of Diane Z. Kirsch__, et. al

Pursuant to FRAP 26.1 and Local Rule 26.1,

__DIANE Z. KIRSCH FAMILY TRUST__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:


Signature: _s/ Roger A. Hayden, II_____    Date: __November 18, 2013__

Counsel for: _Appellant_____

# CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _November 18, 2013_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

K. Stewart Evans Jr., Esquire
Suite 525
10201 Fairfax Boulevard
Fairfax, VA  22030
Telephone:  703-691-8131
stewart@evansstarrett.com


_s/ Roger A. Hayden, II_____          _November 18, 2013_____
(signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _13-2348_      Caption: _Lee Graham Shopping Center, LLC, et. al v. Estate of Diane Z. Kirsch_, et. al

Pursuant to FRAP 26.1 and Local Rule 26.1,

_ESTATE OF DIANE Z. KIRSCH_
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐ YES ☑ NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  s/ Roger A. Hayden, II          Date:   November 18, 2013

Counsel for:  Appellant

# CERTIFICATE OF SERVICE
**************************

I certify that on  November 18, 2013  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

K. Stewart Evans Jr., Esquire
Suite 525
10201 Fairfax Boulevard
Fairfax, VA  22030
Telephone:  703-691-8131
stewart@evansstarrett.com

s/ Roger A. Hayden, II                    November 18, 2013
        (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  13-2348        Caption:  Lee Graham Shopping Center, LLC, et. al v. Estate of Diane Z. Kirsch,  et. al

Pursuant to FRAP 26.1 and Local Rule 26.1,

SEPARATE TRUST FOR THE BENEFIT OF WAYNE CULLEN
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          ☐ YES ☑ NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: __s/ Roger A. Hayden, II_____     Date: ___November 18, 2013___

Counsel for: __Appellant_____

## CERTIFICATE OF SERVICE
**************************

I certify that on __November 18, 2013__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

K. Stewart Evans Jr., Esquire
Suite 525
10201 Fairfax Boulevard
Fairfax, VA  22030
Telephone:  703-691-8131
stewart@evansstarrett.com

__s/ Roger A. Hayden, II_____          ___November 18, 2013___
        (signature)                                     (date)

# TABLE OF CONTENTS

*Page(s)*

CORPORATE DISCLOSURE STATEMENT – Diane Z. Kirsch Family Trust .................................................................................................. i

CORPORATE DISCLOSURE STATEMENT – Estate of Diane Z. Kirsch ......... iii

CORPORATE DISCLOSURE STATEMENT – Separate Trust for the Benefit of Wayne Cullen ......................................................................... v

TABLE OF AUTHORITIES ....................................................................... x

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ...................................................................................... 1

    a.    Jurisdiction of District Court .................................................... 1

    b.    Basis for Court of Appeals Jurisdiction ................................... 2

    c.    Timeliness of Appeal ............................................................... 2

    d.    Certification that appeal is from a final order or judgment ...... 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................... 3

STATEMENT OF THE CASE ..................................................................... 6

SUMMARY OF THE ARGUMENT ........................................................... 13

ARGUMENT ......................................................................................... 18

    I.    Standard of Review: All Issues Presented Reviewed De Novo .............. 18

    II.    Partnership Agreement Did Not Restrict Assignment to Family Trust or Cullen Trust ............................................................... 19

        a.  Partnership Agreement Does Not Restrict Transfer ........... 21

        b.  If Appellant's Interpretation is Not Accepted, the Court Must Find Ambiguity and Remand for Discovery ...................... 26

vii

III.  To the Extent Transfer Restrictions Apply to the Assignments, the Agreement Unlawfully Restricts the Freely Assignable Economic Interest ..................................................................................27

    a.  Section 6.02(c)'s Unlimited Withholding of Economic Rights to Assignees is a Senseless and Unlawful Restraint on Alienation .................................................................................28

    b.  Assignment of Economic Rights Must Be Immediately Recognized ...........................................................................32

IV.  General Partners Approved Transfer to Family Trust and Cullen Trust, Either Waiving Transfer Restrictions or Indicating Compliance .........................................................................................33

    a.  Partnership Consented to Transfer ...................................33

        i.  First acknowledgment letter .........................................34

        ii.  Zehfuss had several opportunities to learn about contents of Family Trust and substance of Kirsch's estate plan; knowledge should be imputed...........................................34

        iii. Second acknowledgment letter .................................36

        iv. Partnership's letters, combined with the opportunity to learn about Kirsch's estate plan, binds Appellees who cannot now claim unilateral mistake .................................................36

    b.  The Partnership Waived Its Right to Void the Transfer to the Family Trust by Failing to Act Timely ...............................38

    c.  At a Minimum, Acknowledgment Letters Create Dispute of Material Fact...................................................................40

V.  Grant of Summary Judgment Inappropriate Where Dispute of Material Fact Exists; Partnership Denies Limited Partner Access to Books and Records and Zehfuss Intentionally Deceives Sister ..............41

    a.  Record, Even Without Discovery, Indicates Dispute of Witness Credibility..........................................................................43

VI. Unlawful Conversion to LLC, Access to Books and Records and Conversion of Partnership Distributions ...................................................43

VII. Remainder of Counterclaims Should Be Reinstated ...............................45

    a. Conversion.................................................................................45

    b. Negligence, Fraud and Intentional Interference....................................47

VIII. District Court Prematurely Granted Motion For Summary Judgment Where Appellant Did Not Have An Opportunity to Conduct Discovery ...................................................................................48

IX. District Court Lacked Personal and Subject Matter Jurisdiction.............50

    a. Subject Matter Jurisdiction.................................................................50

    b. Personal Jurisdiction.................................................................51

X. District Court Should Have Ordered Zehfuss Joined as a Necessary Party ...................................................................................54

CONCLUSION ...................................................................................55

REQUEST FOR ORAL ARGUMENT ...................................................56

STATUTORY ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ix

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*AHP Holdings, LLC v. New Meadows Realty Co., LLC*,
   2013 Conn. Super. LEXIS 899 (2013) .......................................... 25, 28, 29, 30

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................. 41, 49

*Atalla v. Abdul-Baki*,
   976 F.2d 189 (4th Cir. 1992) ............................................................42

*Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*,
   283 F.3d 208 (4th Cir. 2002) ...........................................................53

*Belveron Partners Fund I, LP v. Augustus Manor Associations Limited
   Partnership*, Superior Court, complex litigation docket at Hartford,
   Docket No. HHDX04CV095032917S (March 31, 2010, Shapiro, J.)
   49 Conn. L. Rptr. 647, 2010 Conn. Super. LEXIS 794] ...................29

*Black & Decker Corp. v. United States*,
   436 F.3d 431 (4th Cir. 2006) ............................................................42

*Bridgestone/Firestone, Inc. v. Prince William Square Associates*,
   250 Va. 402, 463 S.E.2d 661 (1995) .................................................26

*Brooks v. Motsenbocker Advanced Devs., Inc.*,
   242 Fed. Appx. 889 (4th Cir. 2007).................................................53

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)....................52

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................48

*Charbonnages de France v. Smith*,
   597 F.2d 406 (4th Cir. 1979) ...........................................................41

*CLT Logistics v. River W. Brands*,
   777 F. Supp. 2d 1052 (E.D. Mich. 2011)..........................................49

x

*Combs v. Dickenson-Wise Medical Group,*
  233 Va. 177, 355 S.E.2d 553 (1987) ....................................... 27, 53

*Danville Plywood Corp. v. Plain & Fancy Kitchens,*
  218 Va. 533, 238 S.E.2d 800 (1977) ....................................52

*Davis v. Zahradnick,*
  600 F.2d 458 (4th Cir. 1979) ....................................... 38, 42

*Deutsch v. Wolff,*
  7 S.W.3d 460, 463 (Mo. Ct. App. 1999)................................31

*Dixon v. Am. Indus. Leasing Co.,*
  157 W. Va. 735, 205 S.E.2d 4 (1974)................................31

*Doctors Co. v. Women's Healthcare Assocs., Inc..*
  285 Va. 566, 740 S.E.2d 523 (Va. 2013)................................21

*Dominick v. Vassar,*
  235 Va. 295, 367 S.E.2d 487 (1988) ................................39

*Eschner v. Eschner,*
  146 Va. 417, 131 S.E. 800 (1926) ................................22

*Evans v. Technologies Applications & Serv. Co.,*
  80 F.3d 954 (4th Cir. Md. 1996)................................48

*Falls Church v. Protestant Episcopal Church in U.S.,*
  285 Va. 651, 740 S.E.2d 530 (2013) ................................37

*Foster v. Carlin,*
  200 F.2d 943 (4th Cir. 1953) ................................50

*Francis v. Allstate Ins. Co.,*
  709 F.3d 362 (4th Cir. 2013) ................................18

*Friedberg v. Hague Park Apts.,*
  61 Va. Cir. 589................................44

*Georgiades v. Biggs,*
  197 Va. 630, 90 S.E.2d 850 (1956) ................................27

*Great Falls Hardware v. South Lakes Village Ctr.*,
238 Va. 123, 380 S.E.2d 642 (1989) ................................................................21

*Greenfeld v. Stitely*,
2007 Va. Cir. LEXIS 7 (Va. Cir. Ct. Jan. 5, 2007)...........................................46

*Haller v. Abbale* (In re Abbale),
475 B.R. 334 (Bankr. E.D.N.Y. 2012)................................................................31

*Hamden v. Total Car Franchising Corp.*,
2013 U.S. App. LEXIS 23514 (4th Cir. Va. Nov. 22, 2013) ...................... 23, 24

*Handley v. BSA*,
32 Va. Cir. 524 (Va. Cir. Ct. 1992) ....................................................................21

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
466 U.S. 408, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)....................................52

*Hiett v. Barcroft Beach, Inc.*,
18 Va. Cir. 315 (Va. Cir. Ct. 1989) ....................................................................37

*Home Paramount Pest Control Companies, Inc. v. Shaffer*,
282 Va. 412 (2011) ..............................................................................................28

*Hutchinson v. Maxwell*,
100 Va. 169, 40 S.E. 655 (1902)..........................................................................28

*In re Dews*,
152 B.R. 982  (D. Colo. 1993)..............................................................................31

*In re Salahi*,
2012 Bankr. LEXIS 1813 (Bankr. E.D. Va. Apr. 24, 2012) ...............................28

*In re Williams*,
455 B.R. 485 (Bankr. E.D. Va. 2011)..................................................................45

*International Shoe Co. v. Washington*,
326 U.S. 310 (1964).........................................................................................52, 53

*James v. Circuit City Stores, Inc.*
370 F.3d 417 (4th Cir. 2005) ..............................................................................20

*Jesselson v. Outlet Assoc. of Williamsburg, Ltd. Partnership*,
    784 F. Supp. 1223 (E.D. Va. 1991) ................................................26

*Johannssen v. Dist. No. 1 - Pac. Coast Dist.*,
    292 F.3d 159 (4th Cir. 2002) .....................................................18

*Johnson v. Shaffer*,
    33 Va. Cir. 57, 1993 Va. Cir. LEXIS 720 (Va. Cir. Ct. 1993) .................... 37, 41

*Kanarek v. Gadlex Assoc.*,
    115 A.D.2d 592 (N.Y. App. Div. 2d Dep't 1985)...............................30

*Koch v. Seventh St. Realty Corp.*,
    205 Va. 65, 135 S.E.2d 131 (1964) ...............................................39

*Lake of the Woods Ass'n, Inc. v. McHugh*,
    238 Va. 1, 380 S.E.2d 872 (1989)................................................22

*Lataif v. Comm'l Indus. Constr.*,
    223 Va. 59, 286 S.E.2d 159 (1982) ...............................................39

*Lee v. Allied Sports Associates, Inc.*,
    349 Mass. 544, 209 N.E.2d 329, 332,
    1965 Mass. LEXIS 762 (Mass. 1965)............................................37

*Lipps v. First American Service Corp.*,
    223 Va. 131, 286 S.E.2d 215, 1982 Va. LEXIS 179 (Va. 1982)........................28

*Lucy v. Zehmer*,
    196 Va. 493, 84 S.E.2d 516 (1954) ...............................................37

*Marcus v. Quattrocchi*,
    715 F. Supp. 2d 524 (S.D.N.Y. 2010) ...........................................50

*Markham v. Allen*,
    326 U.S. 490 (1946).............................................................50

*Marshall v. Marshall*,
    547 U.S. 293 (U.S. 2006)........................................................50

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936).............................................................53

xiii

*Merriman v. Cover, Drayton, & Leonard*,
104 Va. 428, 51 S.E. 817, 1905 Va. LEXIS 115 (Va. 1905)..............................28

*Miller & Co. v. Lyons*,
113 Va. 275, 74 S.E. 194, 1912 Va. LEXIS 35 (Va. 1912)...............................38

*Musgrave v. HCA Mideast, Ltd.*,
856 F.2d 690, 1988 U.S. App. LEXIS 12363,
111 Lab. Cas. (CCH) P56,026 (4th Cir. Va. 1988) .........................................27

*Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*,
61 Va. App. 482, 737 S.E.2d 544 (2013)......................................................42

*Ott v. Monroe*,
282 Va. 403, 409, 719 S.E.2d 309 (2011) ................................................ 30, 31

*Overstreet v. Ky. Cent. Life Ins. Co.*,
950 F.2d 931 (4th Cir. 1991) ......................................................................41

*Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*,
2013 U.S. App. LEXIS 24865,
2013 WL 6570947 (4th Cir. Md. Dec. 16, 2013) ...........................................18

*PGI, Inc. v. Rathe Prods., Inc.*,
265 Va. 334, 576 S.E.2d 438 (2003) ...........................................................46

*Phillips v. Mazyck*,
273 Va. 630, 643 S.E.2d 172 (2007) ...........................................................37

*R. S. Oglesby Co. v. Lindsey*,
112 Va. 767, 72 S.E. 672 (Va. 1911).............................................................19

*Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*,
301 F. Supp. 2d 545 (E.D. Va. 2004) ...........................................................52

*Rickets v. Pa. R.R.*,
153 F.2d 757 (2d Cir. 1946)........................................................................37

*Robinson v. Carriage House Assocs., Inc.*,
1990 Del. Ch. LEXIS 213 (Del. Ch. Dec. 18, 1990) .........................................22

*Russell v. Microdyne Corp.*,
65 F.3d 1229 (4th Cir. 1995) ......................................................................41

*Schneider v. Cate*,
405 F. Supp. 2d 1254 (D. Colo. 2005)................................54

*Seabulk Offshore Ltd. v. Am. Home Assurance Co.*,
377 F.3d 408 (4th Cir. 2004) ........................................18

*Shaffer v. Heitner*,
433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977)................37, 53

*Sink v. Commonwealth*,
13 Va. App. 544 (Va. Ct. App. 1992)................................37

*Smith v. Smith*,
81 Va. Cir. 135, 2010 Va. Cir. LEXIS 114
(Va. Cir. Ct. 2010) ................................9, 10, 18, 20, 41, 43, 45

*Sosebee v. Murphy*,
797 F.2d 179 (4th Cir. 1986) ......................................38, 41

*Stallard v. Sutherland*,
131 Va. 316, 108 S.E. 568, 571 (1921) ...........................39

*Stevens v. Howard D. Johnson Co.*,
181 F.2d 390 (4th Cir. 1950) ......................................44

*Sussex Community Servs. Ass'n v. Virginia Soc'y for
Mentally Retarded Children*,
251 Va. 240 (Va. 1996)............................................22

*Tm Delmarva Power v. Ncp of Va.*,
263 Va. 116, 557 S.E.2d 199 (Va. 2002)...........................21

*UMG, Inc. v. Green*,
66 Va. Cir. 232 (2004) ............................................39

*United Leasing Corp. v. Thrift Ins. Corp.*,
247 Va. 299, 440 S.E.2d 902 (1994) ...............................46

*United States v. Diebold Inc.*,
369 U.S. 654 (1962).................................................41

*United States v. White*,
139 F.3d 998 (4th Cir. 1998) .......................................1

xv

*Universal C.I.T. Credit Corp. v. Kaplan*,
198 Va. 67, 92 S.E.2d 359 (1956) ...................................................46

*W. Am. Ins. Co. v. Johns Bros.*,
435 F. Supp. 2d 511 (E.D. Va. 2006) ..........................................26

*Waikoloa Ltd. Partnership v. Arkwright*,
268 Va. 40, 597 S.E.2d 49 (2004) ........................................ 18, 36

*Webster v. U.S. Dep't of Agric.*,
685 F.3d 411 (4th Cir. 2012) ...................................................19

*Williamson v. Kay (In re Villa West Assocs.)*,
146 F.3d 798 (10th Cir. 1998) ................................................20

## Statutes

28 U.S.C §1332 ..........................................................................1, 5

28 U.S.C. §1291 .............................................................................2

28 U.S.C. §1367 .............................................................................1

Colo. Rev. Stat. § 7-60-127 (1986) .............................................31

Fed. R. App. P. 4(a)(1) ..................................................................2

Fed. R. Civ. P. 15 ........................................................................48

Fed. R. Civ. P. 56(d) ...................................................................49

Fed. R. Civ. Pro. 56(c)(4) ............................................................43

MD. CODE ANN. EST. & TRUSTS § 1-301 ................................ 47, 50

MD. CODE ANN. EST. & TRUSTS § 2-102 ......................................50

MD. CODE ANN. EST. & TRUSTS § 7-102 ......................................47

MD. CODE ANN. EST. & TRUSTS § 7-401 ................................... 7, 51

Va. Code § 8.01-328.1 ..................................................................51

Va. Code § 13.1-1023 ..................................................................45

Va. Code § 13.1-1023(B)(1) ................................................................45

Va. Code § 13.1-1023(C)(2) ...............................................................45

Va. Code § 13.1-1028 ..........................................................................44

Va. Code § 13.1-1047(A) .....................................................................45

Va. Code § 50:73.47 ............................................................................30

Va. Code § 50-73.106 ..........................................................................30

Va. Code § 50-73.107 ..........................................................................31

Va. Code § 50-73.22:1 .........................................................................30

Va. Code § 50-73.45 ................................................................. 20, 29, 30

Va. Code § 50-73.47 ............................................................................30

Va. Code § 50-73.48 ............................................................................44

Va. Code § 50-73.80(F) ........................................................................37

## Other Authorities

1 N.Y. Practice Series, New York Limited Liability Companies
    and Partnerships §7.7 (2012) ........................................................31

11 Jeffrey W. Stempel & Steven S. Gensler ........................................49

J. Crane & A. Bromberg, *Partnership* § 42, at 239 (1968) ...................32

James Wm. Moore et al., *Moore's Federal Practice* § 102.92[1] ...........50

*Moore's Federal Practice* § 56.60 (3d ed. 2010)................................49

Restatement (Second) of Contracts § 21A..........................................37

Webster Collegiate Dictionary 11th ed...............................................23

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Appellant contests the subject matter jurisdiction of the district court (and hence this court's jurisdiction)[1] under the probate exception as argued in Section IX(a), *infra*. The following is a statement of jurisdiction without regard to the exception.

### a. Jurisdiction of District Court

Appellee, Lee Graham Shopping Center, LLC ("LLC"), filed its complaint pursuant to 28 U.S.C § 1332 diversity jurisdiction. A13. The LLC is a resident of Virginia. Appellant Wayne Cullen ("Cullen"), acting in his fiduciary capacities, is a resident of Maryland and the partnership interest in contention exceeds $75,000 in value. A12; A208; A211. Mr. Cullen brought a counterclaim as well as a third party complaint centering on the same contested partnership interest on the basis of diversity jurisdiction; the other Appellees are all citizens of Virginia. A208. In his counterclaim, Appellant also invoked the district court's pendent jurisdiction (28 U.S.C. 1367) to enforce rights to cash distributions from the LLC or its predecessor, which at the time were less than $75,000. A213.

---

[1]  Lack of subject matter jurisdiction can be raised at any time by the parties or by the court itself. *United States v. White*, 139 F.3d 998 (4th Cir. 1998).

1

### b.  Basis for Court of Appeals Jurisdiction

This Court has appellate jurisdiction under 28 U.S.C. § 1291, which grants appellate review of final decisions of district courts of the United States.

### c.  Timeliness of Appeal

The instant appeal arises from the district court's May 2, 2013 order denying Mr. Cullen's motion to dismiss (A196-98) and the district court's October 3, 2013 entry of summary judgment (A544-48), which granted Appellees' motion for summary judgment and denied or dismissed all counts of Appellant's Counterclaim and Third Party Complaint.  Mr. Cullen filed a timely notice of appeal on October 31, 2013. Fed. R. App. P. 4(a)(1); A598.

### d.  Certification that appeal is from a final order or judgment

Counsel certifies that the district court's October 3, 2013 order terminated all litigation in the lower court.  A584.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court committed an error of law by improperly interpreting and applying a partnership agreement's provisions on the assignment of a limited partnership interest when the restrictions applied only in the event of a bona fide offer to purchase the interest and the transfers in contention were not the result of a bona fide offer.

2. Whether the district court committed an error of law by failing to determine that a partnership agreement's restrictions on the assignment of a limited partnership interest were ambiguous and declining to take evidence and hold a trial to determine the meaning of the ambiguous provisions.

3. Whether the district court, in considering an issue of first impression, committed an error of law by failing to rule that provisions in a partnership agreement restricting the assignment of economic interests associated with a limited partnership interest, versus the management and control rights, constitutes an unreasonable restraint on alienation.

4. Whether the district court committed an error of law in failing to determine that Appellant complied with the transfer restrictions or, in the alternative, that the partnership waived such requirements, or failing to determine that disputes over material facts exist and holding a trial to resolve such disputes

5. Whether the district court committed an error of law by ruling that Appellant, in any of his fiduciary capacities, was not entitled to exercise the rights of a member of the Appellee limited liability company or as a partner of its predecessor limited partnership by, *inter alia*, voting on the entity's conversion to a limited liability company, adopting a more restrictive operating agreement, and exercising Appellant's rights to review the books and records and obtain an accounting.

6. Whether the district court committed an error of law by dismissing Appellant's claims for negligence, fraud and intentional interference with contract when the material facts in dispute demonstrated that the general partner of a partnership, who was also the brother of the decedent partner, willfully misstated and mislead the decedent about her rights to assign her limited partnership interest and create an estate plan to dispose of the interest on her death as she wished with the intent that the general partner might ultimately inherit the interest.

7. Whether the district court committed an error of law by dismissing a claim for conversion of distributions associated with a limited partnership interest by declining to exercise pendent jurisdiction.

8. Whether the district court committed an error of law by exercising subject matter jurisdiction where the probate exception applies and the claims

4

asserted by the Appellee required the district court to make rulings traversing on the jurisdiction of a state probate court.

9. Whether the district court committed an error of law by exercising personal jurisdiction over the Appellant, a Maryland resident acting as the personal representative of a Maryland probate estate, and the trustee of two Maryland trusts and the asset in question, which is held and administered by the Appellant in Maryland and the Appellant otherwise has no contacts conferring jurisdiction within the Eastern District of Virginia .

10. Whether the district court committed an error of law by denying Appellant's motion to join the general partner of the plaintiff partnership in his personal capacity as a necessary party below where the complaint sought relief expressly benefitting the general partner personally and, in the event of an adverse ruling against the partnership, the general partner could bring a personal action in a separate proceeding seeking a ruling inconsistent with the district court.

11. Whether the district court committed an error of law in entertaining a summary judgment motion before Appellant had an opportunity to conduct discovery and the Appellant submitted affidavits and other documents raising issues of witness credibility and disputed material fact.

## STATEMENT OF THE CASE

This case arises from Diane Z. Kirsch's ("Kirsch") estate plan to ultimately transfer a 21-percent interest ("Subject Interest") in the Lee Graham Shopping Center Limited Partnership ("Partnership") at death to a trust for the benefit of her friend and companion, Appellant Wayne Cullen ("Cullen"). A209-11. The litigation arose when Kirsch's brother and the Partnership's General Partner, Appellee Paul V. Zehfuss' ("Zehfuss"), after consenting to the transfer on behalf of the Partnership (A283), unlawfully attempted to thwart Kirsch's dying wishes, motivated by his personal animus for Cullen and desire for personal gain.  A11-9; A419-22.

Kirsch died testate on January 22, 2012, a resident of Maryland.  Probate of her will is proceeding before the Register of Wills and the Orphan's Court for Montgomery County, Maryland as Estate No. W7291 (the "Probate Estate"). A133-34. Prior to her death, Kirsch created the Diane Z. Kirsch Family Trust (the "Family Trust"), a revocable trust, into which Kirsch assigned the partnership interest with Zehfuss's consent and acknowledgment, acting as general partner of the Partnership. A282; A238; A496.  The terms of the Family Trust required that, upon Kirsch's death, intangible assets of the trust, including the Subject Interest, be distributed to one or more trusts for Cullen's benefit.  A240-43.  Kirsch combined the Family Trust, a common estate planning tool used to minimize or eliminate

probate, with what is colloquially referred to as a "pour over will" ("Will"). A221. A pour over will bequeaths any asset remaining in the decedent's probate estate to the Family Trust.[2] A225. The will nominated Cullen as the personal representative of Kirsch's estate on her death. A226. The Family Trust appointed Cullen as successor trustee upon Kirsch's death and as trustee of any trusts created for Cullen's benefit. A253.

At Kirsch's request, her estate planning attorney Stacey A. Prince-Troutman ("Prince-Troutman") spoke with Zehfuss to facilitate the transfer of the Subject Interest to the Family Trust in the spring of 2011. A436-37. This call was prompted, in part, by Kirsch's concern that Zehfuss would interfere with the transfer. A419-22; A429.[3] It is un-refuted in the record that, during an April 22, 2011 telephone conversation between Zehfuss and Prince-Troutman, Zehfuss never mentioned applicable transfer restrictions and even asked about the beneficiaries of Kirsch's estate plan, but immediately retracted his inquiry, stating it was not his business. A436-37.

---

[2] Contrary to Appellee's assertions that the Subject Interest passes by intestate succession because Kirsch's estate plan provides for no eligible beneficiaries, both the Will (A226-31), the Family Trust (A259-70) and Maryland law (Md. ESTATES AND TRUSTS Code Ann. § 7-401) expressly provide Appellant, in either capacity, the power to sell assets and make distributions in cash or in kind.

[3] Kirsch and Zehfuss had a long history of mutual dislike for each other and, in addition to Attorney Price-Troutman's call, Kirsch personally conveyed her estate plan to Zehfuss. *Id.*.

On May 31, 2011, subsequent to the conversations between Zehfuss and Prince-Troutman and Zehfuss and Kirsch, Kirsch transferred and assigned the Subject Interest to the Family Trust. A450. Contemporaneously therewith, Kirsch sent a letter, prepared by her attorney, to Zehfuss, as general partner of the Partnership informing the Partnership of the transfer, asking that the records of the Partnership be updated to show the new owner of the Subject Interest, and asking for confirmation of the changes. A282; A449. By letter dated June 1, 2011, Zehfuss, on behalf of the Partnership, acknowledged, consented to, and accepted the transfer of the Subject Interest to the Family Trust. A283; A451. Later, by letter to Prince-Troutman dated January 24, 2012, two days after Kirsch's death, on behalf of the Partnership, Zehfuss confirmed the acceptance of the assignment of the Subject Interest to Kirsch's Family Trust. A452.

On March 2, 2012, pursuant to the terms of the Kirsch Trust, Cullen as trustee of the Family Trust transferred and assigned the Subject Interest to the *Separate Trust f/b/o Wayne Cullen Pursuant to Article X of the Diane Z. Kirsch Family Trust u/a dated 6/30/2008, as Amended and Restated 10/05/2010* ("Cullen Trust"). A284. Cullen also serves as trustee of the Cullen Trust. A253.

The Partnership, acting through its general partner Zehfuss, thereafter repudiated its prior acceptance and refused to consent to, acknowledge, and accept

8

the Cullen Trust as the owner and holder of the Subject Interest.[4]  The Partnership, without obtaining the unanimous consent of its partners, subsequently filed papers with the Virginia Corporation Commission purporting to convert to a limited liability company known as the Lee Graham Shopping Center, LLC (the "LLC"). A20.  Certain members of the LLC, purporting to be all of the members, also adopted an operating agreement ("Operating Agreement") without Cullen's knowledge or consent. A348-72. The Subject Interest appears to be described as the "LGSC Money Market Account" and was signed for by Appellees Zehfuss and T. Eugene Smith.  A371-72.

The LLC initiated the instant litigation in the United States District Court for the Eastern District of Virginia, seeking a declaratory judgment that: (1) the transfer of the Subject Interest to the Family Trust and the subsequent transfer to the Cullen Trust were invalid because they violated provisions of the partnership agreement governing the Partnership[5]; and (2) contending that the Subject Interest

_____

[4] The Partnership refused to make distributions to Cullen, denied Cullen access to its books and records or an accounting, and excluded Cullen from partnership meetings. A214-16.

[5] Initially, the Partnership claimed it was comprised of two constituent documents: the Agreement dated December 29, 1984 (A22) and the Amended Certificate of Limited Partnership dated July 1, 1985 (A46).  See Complaint at ¶ 12; A14.  Two months later, by declaration, Zehfuss filed an Amendment to the Agreement, (as well as an Amended Certificate of Partnership, and an Amended Power of Attorney all dated July 1, 1985), (A164-183) claiming that he recently found the document and had forgotten it. A167 at ¶ 14. His claim was not true. *See* Cullen Affidavit at ¶¶ 15-7. A421-22.  Appellees also placed into the record the Articles

9

could only be transferred to certain family members, with Cullen not one of that group.  A11-9. The LLC further sought a ruling that the Partnership Interest constitutes an asset of the Probate Estate and directing that the interest passes through intestate succession outside the Will to Zehfuss, Kirsch's brother and only heir at law. *Id*.

Cullen, in his fiduciary capacities, counterclaimed against the LLC and joined third party defendants, Appellees Zehfuss, Sitta M. Zehfuss, Nicole M. Zehfuss, Paul H. Zehfuss, and T. Eugene Smith as members of the LLC[6].  A199-284.   Cullen sought a declaratory judgment that the Partnership's governing documents did not restrict the transfer of the Subject Interest from the Family Trust to the Cullen Trust or, alternatively, that the Partnership consented to and accepted the transfer of the partnership to the Family Trust, and in turn, the Cullen Trust. A199-284.

The Cullen counterclaim also sought relief for the LLC's unlawful retention of distributions associated with the partnership interest in dispute. A212-14.

_____

of Organization (A20), Consent of Partners (A348) and an Operation Agreement (A349) purporting to be the constituent documents of the LLC. Discovery may have revealed additional organizational and operational documents and information related to the Partnership or the LLC relevant to this litigation. A422; A453.

[6] With his counterclaim, Cullen brought a third party complaint joining the persons he believed to be the other partners of the Partnership. A199. Based in declarations filed by Appellees, it appears that there were other partners of which Cullen was not aware and who purport to be the only members of the LLC. A348.

Cullen further sought an order setting aside the conversion of the Partnership to a limited liability company because of the failure to obtain the unanimous consent of the partners[7], and requiring the LLC to provide an accounting and access to books and records. A214-16. Cullen also brought claims sounding in fraud, negligence and interference with contract stemming from Zehfuss's conspiracy to intentionally mislead his late sister, accept the transfer of the partnership interest, lie in wait until her passing, and subsequently cause the Partnership to repudiate acceptance of the transfer. A216-19.

Prior to filing the counterclaim, Cullen filed a Motion to Dismiss and to Join a Necessary Party. A117-45. Cullen contended that the complaint must be dismissed because: (a) the district court lacked subject matter jurisdiction under the probate exception; and (b) the district court lacked personal jurisdiction because Cullen and the fiduciary estates he represents are all residents of Maryland, the Subject Interest is held and administered in Maryland, and there are not sufficient contacts with Virginia to allow the Eastern District of Virginia to exercise personal jurisdiction. Cullen also contended that Zehfuss was a necessary party because his rights of inheritance were being litigated, including, without limitation, his right to

---

[7] After the counterclaim was filed, Cullen discovered the adoption of the Operating Agreement. (A348). Cullen contends that the adoption of the Operating Agreement without his consent as a member was equally unlawful and causes the LLC to fail. *See* Section VI, *infra.*

11

take the Subject Interest outside Kirsch's Will by intestate succession.  The district court denied each request. A196-98.

Thereafter, before responding to discovery (A453-56), the Appellees filed Motions for Summary Judgment based on the pleadings and affidavits submitted into the record. A303-86. On October 3, 2013, the district entered an Order and Memorandum Opinion holding that

> [Section 6.02 of the Partnership Agreement] specifically governs the assignment of limited partners' interests. That section provides for two different ways to assign the a limited partner's interest: 1) Acceptance of a bona fide offer, with a right of first refusal for the other partners, and 2) Transfer to an immediate family member, or to a trust for the benefit of an immediate family member. Regardless of the approach used, substitution of a limited partner requires the written approval of the other partners under [Section] 6.02(b). Therefore, under the clear terms of the Partnership Agreement, transfer of a limited partner's interest to a non-family member is only possible under [Section] 6.02(a), pursuant to the procedure for bona fide offers. A545.

Based upon that interpretation of the Agreement, the lower court ruled that, because the Cullen Trust had no permitted family members as beneficiaries, Cullen had no authority to assign the Subject Interest to the Cullen Trust. The court further ruled that ". . . because the [Family] Trust had no eligible beneficiaries under [Section] 6.02(e) at the time of Mrs. Kirsch's death, Mrs. Kirsch's transfer of her partnership interest to the [Family] Trust became void on the date of Mrs. Kirsch's death." A546. On that basis, the court held that the Subject Interest became an

12

asset of Kirsch's Probate Estate on her death.[8] *Id.*   Except for Count II of the

Counterclaim, the district court further granted summary judgment in favor of

Appellees on all counts of the counterclaim without explanation. A544-47.   In

Count II, Cullen sought a ruling that the cash distributions being held by the LLC

in connection with the Subject Interest must be paid over to Cullen in his fiduciary

capacities. While the court agreed that Cullen is entitled to the distributions,[9]

because the claim was brought pursuant to the court's pendent jurisdiction, the

court declined to exercise jurisdiction and dismissed the claim without prejudice.

A546-47.

## <u>SUMMARY OF THE ARGUMENT</u>

The lower court misinterpreted and misapplied the applicable provisions of

the Limited Partnership Agreement of Lee Graham Shopping Center Limited

Partnership dated July 1, 1985 as amended (A22-45; A173-76) ("Agreement")

---

[8] The Court's order contradicted the courts findings at the hearing on the Motions for Summary Judgment. During argument, the district court judge repeatedly ruled that, while he found that the transfer to the Cullen Trust was void, he found the transfer to the Family Trust to be valid and that the Subject Interest remained vested in the Family Trust after Kirsch's death.  *See* 09/27/2013 Trans. at p. 7, Ln. 16-20 (A576); p. 9, Ln. 14-19 (A578); p. 16, Ln. 22-24 (A585); p. 17, Ln. 20-23 (A586); p. 18, Ln. 2-4, 8 (A587);  p. 19. Ln. 7-10 (A588); p.20, Ln. 1-2 (A589); p. 24, Ln 10-14 (A593); p. 25. Ln. 7-8 (A594). The Order does not explain the basis for the change in the ruling. Moreover, there is no law supporting the defeasance of title as determined by the district court.

[9] *See* 09/27/2013 Trans.at p.9, Ln. 5-13. A578.

which, by its plain terms, freely allowed the transfer of the Subject Interest to the Family Trust and later to the Cullen Trust.  A trial court called upon to interpret provisions of a contract does so as a matter of law, applying the objective standard of contract interpretation.  The court then declares and applies the plain meaning of the language or, if it finds ambiguity after construing the language against the drafter, the court sets forth the alternative meanings, takes evidence and, if necessary, holds a trial to consider extrinsic evidence to determine the meaning intended by the parties. Where the trial court determines the contract's meaning to be clear and unambiguous, as in the case at bar, the appellate court reviews that decision de novo. Regardless of what the Partnership or Zehfuss may have believed or intended the Agreement to provide (which the court may not consider), or what the casual reader of the instrument may glean from its provisions, the only restriction on the free assignability of limited partnership interests under the clear and unambiguous terms of the Agreement is that, in the singular event a limited partner receives a bona fide offer to purchase her interest which she is willing to accept, the partner must give the partnership and the other partners a first right of refusal.  A34-7. The exception to the obligation to give a first right of refusal in the event of a bona fide offer is when the assignment is to a qualifying family member. In that instance and all other instances, there are no restrictions and the Agreement expressly and clearly states "The interest of each Limited Partner in the Partnership

14

**shall** be assignable . . . ." A34. Any other interpretation requires the court to either add or ignore words in the Agreement. Alternatively, at a minimum, this court must find Appellant's interpretation a reasonable one, and find the poorly drafted partnership agreement ambiguous and remand this matter for further proceedings, including discovery.

Even if this court finds some form of restriction applicable to the assignment to the Family Trust or the Cullen Trust, the Agreement unlawfully restricts the assignment of economic rights associated with the Subject Interest. Agreement 6.02(c); A36. A partnership interest is comprised of two divisible components, control rights that are subject to restrictions and freely assignable economic rights . Here, at a minimum, Kirsch could freely convey the economic rights to the Family Trust and Cullen to the Cullen Trust. This is an issue of first impression in Virginia, although a Virginia court recently acknowledged a partnership interest is a composite of divisible rights and other jurisdictions are in accord with Appellant's arguments.

Even if the court determines restrictions applied to the assignment of the Subject Interest to the Family Trust or the Cullen Trust, Kirsch obtained the requisite written consent of the Partnership. A283/A434-52. In fact, the partnership declined several opportunities to inquire about Kirsch's estate plan and proceeded to issue two written letters consenting to the Subject Interest's transfer.

15

A436.  Had discovery proceeded, evidence would have shown that Zehfuss, and therefore the Partnership, was well aware of Kirsch's intention to leave her estate to Cullen.  A480.  In fact, Kirsch expressed concern that Zehfuss would try to interfere with this transfer and arranged a meeting for the express purpose of informing Zehfuss of her plans.  *Id.* The Partnership, at Zehfuss' direction, waited until Kirsch's passing to repudiate the prior acceptance and pursue the Subject Interest for Zehfuss' personal gain. An extension of this argument is that the transfers were voidable, and not void, and the Partnership did not exercise its right to void the transfers in a timely manner.

Summary judgment on Appellant's counterclaim was also inappropriate where discovery had not commenced, disputes of material fact existed, and the law favored Appellant.  For example, Appellant presented credible evidence that Zehfuss, on behalf of the Partnership, knew or should have known about Kirsch's estate plan and, with this knowledge, consented to the series of transfers at bar. A434-52; A417-28.  Appellant also presented affidavits contradicting Zehfuss's self-serving allegations.  A335-39; A417-28.  In addition to the dispute about Zehfuss's knowledge and the significance of the Partnership's acknowledgments, the factual record is undeveloped on Appellant's claims of negligence, fraud and interference of contract because the district court stayed discovery and granted

judgment before Appellees responded to interrogatories and requests for production. A596; A453.

The lower court also erred by dismissing Cullen's claim for an accounting and the right to examine the books and records of the Appellee LLC because: (a) he is a partner or member as the trustee of the Family Trust or Cullen Trust; or (b) as the personal representative of the Probate Estate, he may exercise the rights of a partner of member by statute.

Summary judgment on a disputed factual record is premature when the parties have not had an opportunity to conduct discovery.  A414-15.  The court may also find an insufficient factional record on whether Zehfuss was aware of Kirsch's testamentary wishes and knowingly consented to the Subject Interest's transfer to the Family Trust as a way of "lying in wait" to later repudiate the transfer and interfere with the administration of the Family Trust.

The lower court committed an error of law in exercising subject matter jurisdiction in a diversity action where the Plaintiff requested relief in the form of an order governing the conduct of Appellant in his capacity as Personal Representative of a Maryland estate.  A117-45.  Moreover, the lower court lacked personal jurisdiction over Cullen, who is a Maryland resident and does not have sufficient contacts for the Eastern District of Virginia to exercise jurisdiction over him. Finally, Zehfuss was a necessary party to the action below because, in the

17

event of a ruling adverse to his interest, he could seek alternative and contrary relief in a Maryland court. *Id.*

## **ARGUMENT**

### I. **Standard of Review: All Issues Presented Reviewed De Novo**

The Fourth Circuit reviews both a district court's decision on contract interpretation where extrinsic evidence is not considered, as well as a grant of summary judgment, *de novo*, viewing all facts and drawing all reasonable inferences in Appellant's favor. *Johannssen v. Dist. No. 1 - Pac. Coast Dist.*, 292 F.3d 159, 171, (4th Cir. 2002); *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 2013 U.S. App. LEXIS 24865, 11, 2013 WL 6570947 (4th Cir. Dec. 16, 2013); citing *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 366 (4th Cir. 2013); *Seabulk Offshore Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004). Here, the district court interpreted the Partnership Agreement, a contract[10], found no ambiguity, and summarily decided the issues before the court. A544-48. In

---

[10] *Smith v. Smith*, 81 Va. Cir. 135, 139, 2010 Va. Cir. LEXIS 114 (Va. Cir. Ct. 2010). Interpretation of a limited partnership agreement is a question of law. *Waikoloa Ltd. Partnership v. Arkwright*, 268 Va. 40, 47, 597 S.E.2d 49, 53 (2004).[11] RULPA does not require a partner to comply with statutory procedures to assign his or her partnership interest. Rather, the RULPA provides that partnership interest is freely assignable except as provided in the partnership agreement. *Smith,*, 81 Va. Cir. at 141-142, 2010 Va. Cir. LEXIS 114 (contrasting statutory obligations for admitting a general partner, finding agreement limited assignment of general partnership interest without consent of all partners, but noting "admission of a partner and assignment of a partnership interest are distinct actions).

doing so, the district court necessarily decided several issues of law. This court therefore reviews the entirety of the lower court's ruling *de novo*, and views all facts and drawing all reasonable inferences in Appellant's favor. See *Webster v. U.S. Dep't of Agric.*, 685 F.3d 411, 421 (4th Cir. 2012).

## II. Partnership Agreement Did Not Restrict Assignment to Family Trust or Cullen Trust

At the time both assignments to the Family Trust and Cullen Trust were accomplished, the Agreement governed the Subject Interest. A22-45; A173-76. Agreement, Section 6.02, setting forth the right of a limited partner to assign her interest, when read as whole and each word is given meaning, provides for only one restriction - in the event that a limited partner receives a bona fide written offer for the limited partnership interest (or any part thereof) acceptable to her, she must give a right of first refusal to match the terms of the offer first to the Partnership and, if not exercised, then to the other partners. A34-5. The remaining terms of Section 6.02 inform and set forth parameters to a limited partnership interest's assignment pursuant to a bona fide offer, concluding with Subsection 6.02(e), which provides that assignments to certain family members of a limited partner are exempt from the right of first refusal. A34-7.

Limited partnerships are created and controlled by statute. *R. S. Oglesby Co. v. Lindsey*, 112 Va. 767, 773, 72 S.E. 672 (Va. 1911). Under the Virginia Revised Uniform Limited Partnership Act, a partnership interest is freely assignable except

19

as provided in the partnership agreement.[11]   Va. Code § 50-73.45.[12]   A limited

partnership agreement constitutes a contract between the parties.   *Williamson v.*

*Kay (In re Villa West Assocs.)*, 146 F.3d 798, 802, (10th Cir. 1998).   State law

governs contractual matters.   *James v. Circuit City Stores, Inc*. 370 F.3d 417, 421-

22 (4th Cir. 2005).

> "In Virginia, contracts are construed as written, without adding terms
> that were not included by the parties.  Where the terms in a contract
> are clear and unambiguous, the contract is construed according to its
> plain meaning.  A contract is not ambiguous merely because the
> parties disagree as to the meaning of the terms used.
> Furthermore, contracts must be considered as a whole without giving
> emphasis to isolated terms.    Finally, no word or clause in

---

[11] RULPA does not require a partner to comply with statutory procedures to assign his or her partnership interest. Rather, the RULPA provides that partnership interest is freely assignable except as provided in the partnership agreement. *Smith,*, 81 Va. Cir. at 141-142, 2010 Va. Cir. LEXIS 114 (contrasting statutory obligations for admitting a general partner, finding agreement limited assignment of general partnership interest without consent of all partners, but noting "admission of a partner and assignment of a partnership interest are distinct actions).

[12] "Except as provided in the partnership agreement, a partnership interest is assignable in whole or in part. An assignment of a partnership interest does not entitle the assignee to become or to exercise any rights of a partner. An assignment entitles the assignee to receive, to the extent assigned, only the distribution to which the assignor would be entitled. Except as provided in the partnership agreement, a partner ceases to be a partner upon assignment of all his partnership interest." In Virginia, limited partnerships are generally controlled by the Virginia Revised Uniform Limited Partnership Act, Virginia Code § 50-73.1, et. seq. ("RULPA"). *Sloan v. Thornton*, 249 Va. 492, 496, 457 S.E.2d 60, 62 (1995). However, in any case not provided for in the RULPA, the Virginia Uniform Partnership Act, Virginia Code § 50-1, et seq. ("UPA"), governs. Va. Code § 50-73.75. *Smith*, 81 Va. Cir. at 139, 2010 Va. Cir. LEXIS 114.

a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract." *Tm Delmarva Power v. Ncp of Va.*, 263 Va. 116, 119, 557 S.E.2d 199, (Va. 2002) (internal citations and quotations omitted).

Virginia's rules of contract interpretation do not permit the addition of words not included by the parties. *Id.* at 121. Instead, "Where language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning." *Handley v. BSA*, 32 Va. Cir. 524, 527, 1992 Va. Cir. LEXIS 585 (Va. Cir. Ct. 1992); *citing Great Falls Hardware v. South Lakes Village Ctr.*, 238 Va. 123, 380 S.E.2d 642 (1989). Any ambiguity that arises in the contractual language is construed against the drafter. *Doctors Co. v. Women's Healthcare Assocs., Inc.*. 285 Va. 566, 740 S.E.2d 523, 526 (2013).

### a. Partnership Agreement Does Not Restrict Transfer

Section 6.02 of the Agreement governs assignments of a limited partner's interest and states, "The interest of each Limited Partner in the Partnership **shall be assignable** subject to the following terms and conditions:" (emphasis added) A34. In other words, the Subject Interest is freely assignable subject only to the express limitations set forth in that section. A plain reading of Section 6.02 as a whole clearly restricts only assignments pursuant to bona fide offers. The court must give meaning to the permissive and expansive nature of the default condition of a limited partnership interest. *Sussex Community Servs. Ass'n v. Virginia Soc'y for*

*Mentally Retarded Children*, 251 Va. 240, 245, 467 S.E.2d 468, 470 (Va. 1996).

The district court determined that, at the relevant times to this action, there was no bona fide offer to purchase the Subject Interest. A546.

Section 6.02(a) provides for a right of first refusal to the partnership and its partners "If the Limited Partner shall receive a bona fide written offer, as defined in Section 6.02(d) . . . ."[13]  A34.  This right of refusal in the event of a bona fide

---

[13] In Virginia, rights of first refusal are subject to the rule against perpetuities; therefore, a right is void *ab initio* if, at its creation, there is a possibility the right might not be exercised until after the expiration of the time period fixed by the rule, which is measured by a life or lives in being plus 21 years and 10 months. *Lake of the Woods Ass'n, Inc. v. McHugh*, 238 Va. 1, 4-5, 13, 380 S.E.2d 872, 873, 874-75 (1989) (citations omitted).  "In jurisdictions applying the rule against perpetuities to rights of first refusal, courts hold if a right of first refusal option can be transferred or devised, it would violate the rule because it could possibly vest beyond the permissible period. If an option right is a personal right, however, it necessarily will vest only during the lifetime of the holder of the option right and cannot violate the rule against perpetuities. In determining whether an option right is a personal right, only the characteristic of the right as to the option holder is crucial. The question whether a first refusal option right will terminate upon the holder's death and therefore is personal to the holder must be determined from the intent of the parties at the time the contract came into being and is evidenced by the express terms of the granting document.  Because a corporation has perpetual existence, its option rights continue indefinitely and may never vest. It cannot be a measuring life for the purposes of ascertaining the applicability of the rule against perpetuities." *Robinson v. Carriage House Assocs., Inc*., 1990 Del. Ch. LEXIS 213 (Del. Ch. Dec. 18, 1990).  Here, subparagraph 6.02(a) provides a right of first refusal both to the Partnership and individual partners. **This provision applied to the individual partners is necessarily void. Consequently, this voids the entire Agreement**, which lacks a severability provision. Whether contractual provisions are severable is determined from the intention of the parties. *Eschner v. Eschner*, 146 Va. 417, 422, 131 S.E. 800 (1926).

offer is the lone express limitation to the assignment of a limited partnership interest in the Agreement; assignments are otherwise freely permitted by the express terms of the Agreement.

Next, Subsection (b) discusses substitution of "**the** assignee" as a limited partner upon the consent of the General Partners. A35. Use of the word "the" confirms that Section 6.02 is read conjunctively, and the restrictions and parameters found within Subsection (b) are applicable only to an assignment that is the result of a bona fide offer.[14] A casual reader might exchange the word "the" for "an" and find the provision limits any assignment whatsoever. However, this is not the case. *Id.* The word "the" is defined as "(1)(a) used as a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance (b) used as a function word to indicate that a following noun or noun equivalent is a unique or particular member of its class..." Webster Collegiate Dictionary 11th ed. at 1294. Therefore, the process for becoming a limited partner pursuant to 6.02(b) is only applicable to purchasers for

---

[14] *See Hamden v. Total Car Franchising Corp.*, 2013 U.S. App. LEXIS 23514, *15 (4th Cir. Nov. 22, 2013) (Reviewing use of seminal terms in connected clauses to ascertain context of the term requiring construction, construing against the drafter and finding "termination" did not encompass "expiration").

value, otherwise, the partnership interest "shall be assignable."[15]    See *Hamden*,
2013 U.S. App. LEXIS 23514 at n. 6 (Construing against the drafter and finding
that even though section title purported to apply restrictive covenants to broad
range of circumstances, a careful reading of the actual provisions and drafter's
choice of words did not apply to facts before the court).

Third, in contrast to the Agreement referencing "the" assignee in Subsection
(b), Subsection (c) uses the indefinite article "an" in referring to "an assignee."
A36.    Properly read, this provision applies to all assignees, including assignees
who receive their interest by virtue of a bona fide offer and all other assignees.
This subsection recognizes the right of an assignee to receive distributions, but
purports to give the partnership the right to withhold distributions to the assignee
pending her admission to the partnership; assignees may not become a partner
without the approval of the general partners, which may be withheld at their
discretion.    *See* Agreement at Section 6.02(c), A36.    This provision is an unlawful

---

[15]    Compare the provisions of Section 8.01 of the Operating Agreement
(Memorandum of Third-Party Defendants in Support of Motion for Summary
Judgment, Exhibit 1), which expressly provides:

"8.01. Assignment General. Except as otherwise provided in Sections
8.02, 8.03, and 8.04 of this Operating Agreement, **each Member
hereby covenants and agrees that he will not sell, assign, transfer,
give, mortgage, pledge, encumber, hypothecate or otherwise
dispose of all or any part of his interest in the Company** . . . ."
(emphasis added) A362-65.

restraint on alienation. *AHP Holdings, LLC v. New Meadows Realty Co., LLC* 2013 Conn. Super. LEXIS 899 (2013).[16]

Next, Subsection 6.02(d) defines a bona fide offer. As stated, the district court found that no bona fide offer was made here. A546.

Finally, Subsection 6.02(e), the provision in direct contention in this case, governs certain Family Transfers.[17] A37. The precise language at issue provides that a "sale or other transfer by a Partner, whether *inter vivos* or by will...to his or her spouse, parent, descendant, or spouse of a descendant, or to a trust of which any of said persons are beneficiaries, **shall not be subject to the restrictions or limitations of Section 6.02(a)** [the right of first refusal]**.**" (emphasis added). *Id.* Thus, this subsection relates directly to Subsection (a) dealing with the rights and limitations of a limited partner in the event of bona fide offer. It simply provides that the enumerated family transfers as a result of a bona fide offer are not subject to the right of first refusal provided in Subsection (a).

---

[16] As explained more fully n Section III(a), *infra*, the economic interest in a partnership is freely assignable. However, this provision improperly purports to allow the Partnership to ignore any assignment indefinitely and provide distributions exclusively to the assignor.

[17] The parties agree that neither Cullen nor the Cullen Trust are a "spouse, parent, descendant, or spouse of a descendant, or a trust of which any of said persons are beneficiaries." The Cullen Trust is therefore not subject to this provision.

25

This Court should find that the district court erred as a matter of law in holding that Section 6.02 and, in particular, Subsection 6.02(e), limits the assignment of a limited partnership interest to: (a) bona fide purchasers, and (b) qualified family members.   Nothing in Subsection (e), nor any reasonable interpretation of that subsection or Section 6.02, provides that assignments to or for the benefit of persons other than a family member are proscribed. The assignment of the Subject Interest and the subsequent assignment of to the Cullen Trust were freely permitted pursuant to Section 6.02's opening clause, "The interest of each Limited Partner...shall be assignable..." A34.  To hold otherwise requires the court add words and provisions that do not exist in the Agreement. "The law will not insert by construction, for the benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect." *W. Am. Ins. Co. v. Johns Bros*., 435 F. Supp.2d 511, 520 (E.D. Va. 2006) citing *Bridgestone/Firestone, Inc. v. Prince William Square Associates*, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995).

### b. If Appellant's Interpretation is Not Accepted, the Court Must Find Ambiguity and Remand for Discovery

If the court is persuaded of the reasonableness of an alternate interpretation[18] and cannot reach a conclusion after construing the document against the drafter, it

---

[18] Contract language is ambiguous where it is susceptible to at least two fairly reasonable meanings.  *Jesselson v. Outlet Assoc. of Williamsburg, Ltd. Partnership*, 784 F. Supp. 1223, 1231 (E.D. Va. 1991).

must find that consideration of parole evidence is admissible to resolve the ambiguity. *Musgrave v. HCA Mideast, Ltd*., 856 F.2d 690, 694 (4th Cir. Va. 1988) (finding contract ambiguous); citing *Georgiades v. Biggs*, 197 Va. 630, 90 S.E.2d 850, 854 (1956). When a contract is ambiguous so that resort to parole evidence is required, construction of the contract in accordance with the evidence of the parties' intent is a task for the jury. *Id., citing Combs v. Dickenson-Wise Medical Group*, 233 Va. 177, 355 S.E.2d 553, 557 (1987). Here, summary judgment was entered before the parties had an opportunity to conduct discovery. A414; A454-56; A596.

### III.   To the Extent Transfer Restrictions Apply to the Assignments, the Agreement Unlawfully Restricts the Freely Assignable Economic Interest

If the Court determines that transfer restrictions are applicable to the assignments at bar, then this Court is presented with an issue of first impression in this Circuit. Decided in Appellant's favor elsewhere, and Virginia having dicta in accord, this Court should hold that a partnership agreement may not restrict the transfer of the economic component of a limited partnership interest. Any alternative ruling violates the law's preference for free alienability and a public policy against restraints on trade.

### a. Section 6.02(c)'s Unlimited Withholding of Economic Rights to Assignees is a Senseless and Unlawful Restraint on Alienation

Section 6.02(c) of the Agreement permits the Partnership to ignore an assignment of a limited partnership interest for several purposes, including providing distributions. The Agreement authorizes such exclusions until "after the date such assignee is admitted as a Partner" but does not otherwise describe criteria for partnership admission; admission by the general partners is discretionary. See Agreement at Section 6.02(c); A36.The court must find this restriction (and any other similar restriction) is an unreasonable and unlawful restraint on alienation. *AHP Holdings, LLC v. New Meadows Realty Co., LLC*, 2013 Conn. Super. LEXIS 899, 17-18, 2013 WL 1943935 (Conn. Super. Ct. Apr. 22, 2013).

Virginia has a long tradition of disfavoring restraints on trade and alienation. *Hutchinson v. Maxwell*, 100 Va. 169, 175, 40 S.E. 655, 657 (1902)) (restraints on ordinary rights of property are repugnant) (overruled by statute *In re Salahi*, 2012 Bankr. LEXIS 1813 (Bankr. E.D. Va. Apr. 24, 2012); *See also  Merriman v. Cover, Drayton, & Leonard*, 104 Va. 428, 51 S.E. 817 (1905). The reasonableness of a restraint on the use of property "is to be determined by considering whether it is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public." *Lipps v. First American Service Corp*., 223 Va. 131, 136, 286 S.E.2d 215 (1982).[19]

---

[19] *Cf. Home Paramount Pest Control Companies, Inc. v. Shaffer*, 282 Va. 412, 415, 718 S.E.2d 762 (2011) (finding non-compete provisions of an employment contract overly broad).

This is an issue of first impression in this Circuit. However, applying Connecticut's identical provision as Va. Code Ann. 50-73.45[20], the Connecticut Superior Court held that a limited partner need not obtain consent to assign his or her right to the distribution of profits. "To the extent that an assignment seeks to assign complete partnership rights without the consent of the other partners, the assignee may obtain only economic rights, thus rendering the package of partnership rights severable. This finding is consistent with the public policy disfavoring restraints on the alienation of personal property." *AHP Holdings, LLC*, 2013 Conn. Super. LEXIS 899, 17-18, 2013 WL 1943935. "**Economic rights are fully transferable without consent, and..., without regard to the provisions of the controlling partnership agreement, rights are fully transferable to the extent that they are economic rights.**." *Id.* at 18 (emphasis added) (*citing Belveron Partners Fund I, LP v. Augustus Manor Associations Limited Partnership*, Superior Court, complex litigation docket at Hartford, Docket No. HHDX04CV095032917S (March 31, 2010, Shapiro, J.) [49 Conn. L. Rptr. 647, 2010 Conn. Super. LEXIS 794]); *see also Kanarek v. Gadlex Assoc.*, 115 A.D.2d

---

[20] Commentary to the corresponding RULPA 702 is in accord with the statute not conflicting with the state's common law favoring free alienation, "While the first sentence of Section 702 recognizes that the power to assign may be restricted in the partnership agreement, there was no intention to affect in any way the usual rules regarding restraints on alienation of personal property." http://www.uniformlaws.org/shared/docs/limited%20partnership/ulpa7685.pdf at 50.

592, 496 N.Y.S. 2d 253 (N.Y. App. Div. 2d Dep't 1985) (assignments permissible

without the consent of the other partners, but the assignee is entitled only to receive

the profits of the assigning partner.)

> Dicta in Virginia is in accord with the holding of *AHP Holdings*:
>
> [A] partner's interest in a partnership comprises two distinct and divisible components. The first component, the control interest, encompasses the partner's entitlement to participate with the other partners in the administration of the partnership's affairs. The second component, the financial interest, encompasses only the sharing of profits and losses of the partnership and receipt of distributions from its accumulated income and assets. Under the statute, only the financial interest is alienable. [21]

*Ott v. Monroe*, 282 Va. 403, 409, 719 S.E.2d 309, 311-12 (2011) (separate holding

of *Ott* overturned by statute, ruling that a partnership and limited liability company

interest contains two divisible components remains good law).

---

[21]Although *Ott* addressed the repealed partnership statute rather than the RULPA or the Uniform Partnership Act ("UPA"), the court noted that UPA likewise provides that a partner's "share of the profits and losses of the partnership and the partner's right to receive distributions" are freely transferrable. Va. Code § 50-73.106; *see Ott*, 282 Va. at 409, n.2, 719 S.E.2d at 311, n.2. Other provisions of the UPA are also consistent with *Ott's* holding that a partnership interest contains two divisible components. "An assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or to exercise any rights of a partner. An assignment entitles the assignee to receive, to the extent assigned, only the distribution to which the assignor would be entitled[.]" Va. Code § 50-73.45; s*ee also* Va. Code § 50-73.47 (assignee versus limited partner). Similarly, the RULPA defines a limited partnership interest as "a partner's share of the profits and losses of a limited partnership and the right to receive distribution of partnership assets." Va. Code § 50-73.1. The RULPA also authorizes the transfer of such limited partnership rights to an assignee. Va. Code §§ 50-73.22:1(B), 50:73.47.

The *Ott* court was not called upon to determine whether the LLC could limit the right and ability of a member to transfer his economic interest in the LLC, as opposed to his right to participate in management. However, courts in addition to those in Connecticut have held that a member/partner has an absolute right to transfer his economic interest in the partnership or LLC. *See Deutsch v. Wolff*, 7 S.W.3d 460, 463 (Mo. Ct. App. 1999); *see also In re Dews*, 152 B.R. 982, 985 (D. Colo. 1993) ("Courts interpreting identical statutory provisions [to Colo. Rev. Stat. § 7-60-127 (1986)[22]] have held that a purported transfer of a partnership interest absent the consent of the other partners nevertheless conveys an interest in the profits of the venture."); *Dixon v. Am. Indus. Leasing Co.*, 157 W. Va. 735, 743, 205 S.E.2d 4, 9 (1974) (discussing assignee of partnership interest's right to receive profits that the assigning partner would otherwise be entitled to receive, but not interfere with business affairs).[23]

---

[22]Similar to Virginia's Uniform Partnership Act transfer provisions. *See* Va. Code § 50-73.107.

[23] *Haller v. Abbale (In re Abbale)*, 475 B.R. 334, 340 (Bankr. E.D.N.Y. 2012) (unless otherwise provided in the operating agreement, an assignment of a membership interest does not dissolve an LLC or entitle the assignee to participate in the management of the LLC or to become or exercise any rights or powers of a member. Instead, the assignee obtains only the right to receive the same distributions and the same allocations of profits and losses as the assignor), *citing* 1 N.Y. Practice Series, New York Limited Liability Companies and Partnerships § 7.7 (2012).

In *Deutsch*, the court contrasted a partner's economic and noneconomic rights associated with the partnership. In so doing, it concluded that noneconomic interests, such as the partner's management rights, are not assignable in the absence of approval by the remaining partners. 7 S.W.3d at 463. "In contrast, the partner's economic interest in profits and surpluses may be conveyed or assigned without the approval of the remaining partners. If assigned, the assignee will not become a partner without consent of the other partners as he or she only succeeds to the assignor's right to profits and surpluses." *Id.* (citing J. Crane & A. Bromberg, *Partnership* § 42, at 239 (1968)).

### b. Assignment of Economic Rights Must Be Immediately Recognized

Here, at a minimum, both the Family Trust and the Cullen Trust are assignees of the economic component of the Subject Interest, which Appellant must recognize immediately. A282; A284. The lower court erred in denying the Cullen Trust a declaratory judgment that it was entitled to distributions and all other economic rights following the assignment of the Subject Interest. A212; A400-02. The lower court also necessarily erred in dismissing the Cullen Trust's claim for conversion related to distributions Appellee has wrongfully withheld. A212-14; A403-05.

IV.   **General Partners Approved Transfer to Family Trust and Cullen Trust, Either Waiving Transfer Restrictions or Indicating Compliance**

Should the Court find transfer restrictions applicable to the transfers *sub judice*, the court must find either: (a) Kirsch and the Family Trust complied with any applicable restrictions; (b) the Partnership (i) waived strict compliance with the Agreement, and/or (ii) authorized the transfer of the Subject Interest and cannot invoke a unilateral mistake; or (c) at a minimum, a dispute of material fact exists as to the significance of the Partnership's two acknowledgments.

a.   **Partnership Consented to Transfer**

Where the consent of the Partnership is required to validate the assignment of a limited partnership interest to persons other than qualified family members, the documents governing the Partnership provide that the consent may be provided by the general partners. Am. Certif. of L.P. ¶¶ X, XI. A47-8.[24]   Here, Zehfuss issued a June 1, 2011 letter to Kirsch and her attorney consenting to the assignment to the Family Trust   *See* Prince Troutman Affidavit ¶ 5; A437; A451.   Zehfuss signed this letter in his capacity as General Partner.   *Id.*   On January 24, 2012, Zehfuss issued a second letter, also on behalf of the Partnership, confirming the June 1, 2011 acknowledgment. A452.

---

[24]   The Agreement places similar importance on the consent of the general partners. A35.

### i. First acknowledgment letter

Zehfuss, on behalf of the Partnership, sent this first acknowledgment letter in response to a letter Kirsch had prepared by her attorney and sent to him.  *See* Prince-Troutman Affidavit ¶ 4 (A437); A449. This initial letter expressly directed Zehfuss to ". . .update [the partnership records[25]] to show the new owner of my partnership interest . . . as the [Family] Trust." *Id*.  Kirsch offered to make Prince-Troutman and her law firm available for any further inquiries and provided a telephone number.[26] *Id.*

### ii. Zehfuss had several opportunities to learn about contents of Family Trust and substance of Kirsch's estate plan; knowledge should be imputed

Importantly, prior to the letters, Kirsch's attorney contacted Zehfuss by telephone on Kirsch's behalf to inform him of the planned assignment of Subject Interest to the Family Trust.  Prince-Troutman Affidavit ¶ 3 (A436-37).  She states in her affidavit:

> During my conversation with Mr. Zehfuss, he never mentioned restrictions on the transfer of the [partnership interest]; instead, he requested that I send the assignment with respect to the transfer of the [partnership interest] to process and update the partnership records

---

[25] The Partnership unlawfully refused to allow Appellant access to the books and records of the partnership, which was the subject matter of Count IV of the Complaint.  In addition to needing this information to administer the Kirsch estate, Appellant intended to seek this information in discovery, which might have shed light on the treatment of the assignment by the Partnership.

[26] Zehfuss also had the ability, and did, contact Prince-Troutman via email.  A439. Appellant's discovery sought electronically stored information from Zehfuss.

accordingly. In the conversation, Mr. Zehfuss briefly inquired about the beneficiaries of the [Family] Trust, but he quickly interrupted before I had an opportunity to respond by saying that it was "none of his business" or words of similar effect.

A436-37.  Zehfuss followed the telephone call with a brief email to Attorney Prince-Troutman, indicating he had multiple ways to contact her.  *Id.*; A439. Attorney Prince-Troutman's call to Zehfuss and the associated work on Kirsch's estate plan was not academic.  At the time, Kirsch was becoming increasingly weak as a result of terminal cancer. *See* Cullen Affidavit Paragraph ¶ 5 (A419). Zehfuss knew that attorney Prince-Troutman's work would soon become relevant. *Id.* at ¶ 12 (A421)

Zehfuss harbored personal animus toward Cullen and was not close with his sister. A419-22; A431-33.  In fact, concern over Zehfuss interfering with Kirsch's estate plan led Kirsch to meet with her brother and explain the recipients of her estate before her death.[27] Cullen Affidavit Paragraph ¶ 12 (A412).  Had the district court permitted discovery to occur prior to entertaining motions for summary judgment, the evidence would show that Zehfuss, in an effort to maintain a willful ignorance in preparation for this lawsuit, intentionally refrained from making formal inquiries with attorney Prince-Troutman about Kirsch's estate plan despite ample opportunity.  A453; A434-56.

---

[27] This is in direct contradiction to Zehfuss' declaration and a dispute of material fact. A337-38.

### iii. Second acknowledgment letter

On January 24, 2012, two days after Kirsch's death, Zehfuss again wrote to Attorney Prince-Troutman and restated the Partnership's acceptance of the transfer: "On June 1st we accepted the assignments of [Kirsch's] interests in the partnership and note to [the Family Trust]." A452. Zehfuss again signed the letter in his capacity as General Partner of the Partnership. *Id.*; s*ee also* MSJ 4 (A393) ("On June 1, 2011, Lee Graham Shopping Center Limited Partnership, by it [*sic*] General Partner, Paul V. Zehfuss, acknowledged receipt of the assignment to the [Kirsch Trust].").

### iv. Partnership's letters, combined with the opportunity to learn about Kirsch's estate plan, binds Appellees who cannot now claim unilateral mistake

Under established precepts of Virginia contract law, the acknowledgment letters from the Partnership signed by Zehfuss constitute a binding acceptance of the Family Trust as a new limited partner and of Cullen as the listed beneficiary of the Trust. *See Waikoloa L.P. v. Arkwright*, 268 Va. 40, 46, 597 S.E.2d 49, 53 (2004) (language of partnership agreement establishes the contractual rights of the parties thereto). To determine whether mutual assent to the transfer exists, the court must look exclusively to the objective expressions of the parties' intentions which are communicated between them. *See Falls Church v. Protestant Episcopal Church in U.S.*, 285 Va. 651, 670, 740 S.E.2d 530, 540-41 (2013) (*citing Lucy v.*

36

*Zehmer*, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954)).  Under the objective theory of contracts, a party is bound by the impression he reasonably creates.  *Rickets v. Pa. R.R.*, 153 F.2d 757, 760 (2d Cir. 1946) (L. Hand, J.); *see Phillips v. Mazyck*, 273 Va. 630, 636, 643 S.E.2d 172, 175 (2007) (contracting party's assent is ascertained from his or her words or acts and "not from his or her unexpressed state of mind").  *See generally* Restatement (Second) of Contracts § 21A, cmt. *d.*

The Partnership's assent to the transfer, through Zehfuss's letters, prohibits Appellees from now claiming they did not know the Family Trust's terms in the absence of fraud or mistake.  *Hiett v. Barcroft Beach, Inc*., 18 Va. Cir. 315, 319-320 (Va. Cir. Ct. 1989) (citing *Lee v. Allied Sports Associates, Inc*., 349 Mass. 544, 209 N.E.2d 329, 332, 1965 Mass. LEXIS 762 (Mass. 1965)).  A unilateral mistake affords no ground for avoiding a contract unless Appellees point to some disputed material facts concerning illiteracy, fraud, duress, misrepresentation, denial of opportunity or the like. *Id.; Sink v. Commonwealth*, 13 Va. App. 544, 547 (Va. Ct. App. 1992); *Johnson v. Shaffer*, 33 Va. Cir. 57, 74, 1993 Va. Cir. LEXIS 720 (Va. Cir. Ct. 1993).  The knowledge of a general partner is imputed to the Partnership. Va. Code Ann. § 50-73.80(F).  It is undisputed that Zehfuss knew of Kirsch's desire to leave her estate to Cullen.  *See* Zehfuss Affidavit ¶ 1 (second paragraph 1)

(A337); Cullen Affidavit ¶ 12 (A419-22),[28]   The Partnership was on notice of Kirsch's intentions and, therefore, could not reasonably rely on anything without seeing the documents.   A337.   Failure to review said documents, when opportunities abounded, combined with Zehfuss's letters of June 1, 2011 and January 24, 2012, objectively manifest assent to the transfer of the Subject Interest to the Cullen Trust by way of the Family Trust.

**b.  The Partnership Waived Its Right to Void the Transfer to the Family Trust by Failing to Act Timely[29]**

Even assuming, arguendo, the Partnership did not consent to the Kirsch transfer to the Family Trust, the transfer is not wholly void but was merely voidable.  "A void contract is one that is of no legal effect so that it really does not exist and has never existed as a valid contract.   On the other hand, a voidable

---

[28] Conflicting Affidavits put in dispute whether Zehfuss told his sister she could not transfer the Subject Interest to Cullen, or Kirsch explained her estate plan to Zehfuss to which he consented intentionally failing to advise her of the restrictions. *See* Zehfuss Affidavit ¶ 1 (second paragraph 1) (A337); Cullen Affidavit ¶ 12 (A480). As the Fourth Circuit has expressly recognized, "[o]nly the trier of fact can assess the truthfulness of an affidavit." *Sosebee*, 797 F.2d at 182.  Thus, if the veracity of an affiant on whose testimony a legal motion is based is called into question, summary judgment cannot be appropriately entered in the matter. *Id.*; *Davis*, 600 F.2d at 460.

[29] Cullen further believes that, in discovery, he would have developed facts demonstrating that the Partnership did not adhere to a standard of strict compliance when it permitted assignments of limited partnership interests. *See Miller & Co. v. Lyons*, 113 Va. 275, 289-290, 74 S.E. 194 (Va. 1912) (covenants and stipulations made by a covenantor for his benefit may be waived by him).

contract can be affirmed or rejected or terminated, in whole or in part, at the option of one or both of the parties." *UMG, Inc. v. Green*, 66 Va. Cir. 232, 233-34 (2004). Not only did the Partnership in the case at bar fail to void the transfer, it explicitly acknowledged and approved the transfer without pursuing Kirsch's offer to provide additional information through her attorneys.   Hence, the transfer is valid as ratified. *See Koch v. Seventh St. Realty Corp.*, 205 Va. 65, 71, 135 S.E.2d 131, 135 (1964) (voidable contract may be made valid through ratification by the parties); *Stallard v. Sutherland*, 131 Va. 316, 108 S.E. 568, 571 (1921) (same).

As a corollary matter, the Partnership was estopped from voiding its acceptance of the Family Trust as a limited partner upon Kirsch's death.   "Elements necessary to establish equitable estoppel, absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment."   *Dominick v. Vassar*, 235 Va. 295, 298, 367 S.E.2d 487, 489 (1988) (quoting *Lataif v. Comm'l Indus. Constr.*, 223 Va. 59, 63, 286 S.E.2d 159, 161 (1982)).

Here, Zehfuss's June 1, 2011 and January 24, 2012 letters manifest acceptance of the transfer of Kirsch's limited partnership interest to the Kirsch Trust and Cullen.   In reliance on such acceptance, Kirsch declined to further alter her estate plan, to make more strident efforts to encourage Cullen to marry her, or to seek a bona fide offer for her partnership interest.   Plaintiff's later revocation of

its acceptance unquestionably harms the Kirsch's estate plan because Kirsch's express post mortem wishes are not being carried out.

### c. At a Minimum, Acknowledgment Letters Create Dispute of Material Fact

At a minimum, the significance of Zehfuss's letters on behalf of the Partnership and his telephone call with attorney Prince-Troutman create an issue of material fact as to whether, in offering its consent to the Family Trust, the Partnership consented to the admission of the Cullen Trust. A jury would consider evidence providing additional context, such as testimony from Kirsch's financial planner, Herb Means. Mr. Means would testify that Kirsch told him on numerous occasions that she "had no personal relationship with [Zehfuss]...and did not like associating with him." A488-92. The jury would also hear evidence from Cullen that "she did not like her brother Mr. Zehfuss nor (sic) associating with him" and stated that she did not want him to benefit at all from her estate. Cullen Affidavit ¶ 6 (A478). Cullen would also testify that Zehfuss had ill feelings toward Kirsch and Kirsch informed Zehfuss of her plans. *Id.* at ¶¶ 10, 12 (A479-80). A jury would then be presented evidence of the multiple opportunities the Partnership had to inquire further about Kirsch's estate plan. A493-11. Taken these facts in the light most favorable to Appellant, the non-moving party, summary judgment should be reversed.

40

**V.  Grant of Summary Judgment Inappropriate Where Dispute of Material Fact Exists; Partnership Denies Limited Partner Access to Books and Records and Zehfuss Intentionally Deceives Sister**

Summary judgment "should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). Even where the evidentiary facts themselves are not in dispute, summary judgment is still not appropriate where the ultimate conclusions to be drawn from those facts are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). This is so because a district court may not, as a matter of law, resolve disputed facts or weigh the evidence to determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995).[30] In fact, when reviewing a motion for summary judgment, the court must accept the nonmoving party's version of the facts as true and, moreover, must resolve all internal conflicts in its favor. *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962); *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

If the credibility of witnesses must be assessed to resolve a factual dispute, summary judgment cannot be properly entered in the case. *Anderson*, 477 U.S. at

---

[30] Accordingly, the district court may not make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).

41

255; *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979). The record below, which is incomplete because no discovery was permitted (A414-15; A453-56), is filled with disputed material facts. For example, if the court finds more than one reasonable interpretation of either the constituent documents or the Partnership's assent, summary judgment was inappropriate. Moreover, the record below contained contradictory affidavits, questioning the veracity and credibility of Zehfuss. *See. e.g* Zehfuss Affidavit ¶ 1 (second paragraph 1) (A337); Cullen Affidavit ¶ 12 (A480). The record was also completely devoid of information related to Appellant's Counterclaims, which the district court improperly connected to the resolution of Appellee's declaratory judgment action. If this court finds that the terms of the Agreement were ambiguous,[31] then summary judgment was improper. *See Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 492, 737 S.E.2d 544, 548 (2013) (whether party waived a contractual right is a factual issue to be determined by the trier of fact).

---

[31] *Atalla v. Abdul-Baki*, 976 F.2d 189, 192 (4th Cir. 1992) ("If there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact.").

### a. Record, Even Without Discovery, Indicates Dispute of Witness Credibility

The record below demonstrates that Zehfuss was not credible in his statements that Kirsch did not have communications with him related to her intentions to leave her estate to Cullen specific to her interest in Lee Graham. Affidavit of Paul V. Zehfuss (A335-38; A170 ¶ 22); Affidavit of Herbert Warren Means ¶¶ 4-5; 8 (A490); Affidavit of Stacey Prince-Troutman ¶ 3 (A495). The record demonstrates that Zehfuss knew about Kirsch's estate plan[32], putting the affidavits of both Zehfuss and T. Eugene Smith ("Smith") that they believed Kirsch left her limited partnership interest by will and/or trust to a family member in dispute.

## VI. Unlawful Conversion to LLC, Access to Books and Records and Conversion of Partnership Distributions

The district court dismissed Count III (Set Aside Conversion to LLC) and Count IV (Accounting and Access to Records) of the counterclaim without explanation. A544-47. In Count III, Cullen contended that the Partnership's purported conversion to the LLC was unlawful because Cullen did not vote on the

---

[32] Notably, Zehfuss's representations about the content of prior conversations he had with Kirsch constitute hearsay and may not be considered for the purposes of a motion for summary judgment. Rule 56(c)(4) of the Federal Rules of Civil Procedure. Without this hearsay, any contention that the consent to Kirsch's transfer of the Subject Trust was the result of unilateral mistake about her estate plan is completely undermined.

conversion as required applicable Virginia law and the terms of the Agreement. A214-15. In Count IV, Cullen sought an accounting and the right to inspect the books and records of the LLC as required under Virginia law. A215-16. This dismissal was improper given the district court's ruling that the Subject Interest is vested in Kirsch's Probate Estate, for which Cullen acts as Personal Representative. A133.

It is undisputed that Kirsch was a partner of the Partnership. A15; A209. In Virginia, the Personal Representative of an estate may exercise all rights that a decedent had as a partner necessary to carry out the administration of the Estate. These rights include the right to view books and records, receive distributions and vote the limited partnership interest. Virginia Code § 50-73.48; *Friedberg v. Hague Park Apts.*, 61 Va. Cir. 589. Cullen, as personal representative of the Probate Estate, therefore had and has the right to vote on Partnership actions and inspect the books and records of the Partnership and LLC. Article IX of the Agreement; LLC Opp. Agmnt. 7.01 A360; Va. Code § 13.1-1028.

At the time Cullen filed his counterclaim, the Operating Agreement for the LLC had not been disclosed. A349; A351. Under Virginia law, all members of the LLC must unanimously agree to the LLC's initial operating agreement. Va.

Code § 13.1-1023(B)(1).[33] Cullen did not provide his consent and a dispute of material fact exists as to who did consent. A348-72.[34] Thus, pursuant to Va. Code § 13.1-1023(B)(1), the Operating Agreement never came into effect. Virginia Code § 13.1-1023(C)(2) provides that, where circumstances indicate, a court may order dissolution of a LLC under § 13.1-1047(A). This may occur where a company's violation of the operating agreement statute makes it not reasonably practicable for the LLC to carry on its business. *See* Code § 13.1-1023, 13.1-1047(A).

## VII. Remainder of Counterclaims Should be Reinstated

### a. Conversion

In Count II of the Counterclaim, Cullen alleged conversion against the Partnership for withholding cash distributions payable in connection with the Subject Interest. The Partnership admitted it had retained $37,800.00 plus interest in partnership distributions attributable to the Subject Interest as of July 2, 2013.

---

[33] Particularly egregious here is the fact that the Operating Agreement contains more restrictive terms than those set forth in the Partnership Agreement. *See* LLC Opp. Agmt. Art. VIII (Assignment; New Members; Resignation) (A362-65).

[34] If the identity of the members in a LLC is unclear, the court will consider extrinsic evidence to determine the membership of the LLC. *In re Williams*, 455 B.R. 485, 495 (Bankr. E.D. Va. 2011). The Operating Agreement apparently signed as of December 4, 2012, includes as a member of the LLC the "LSGC Money Market Account," purporting to own a 21 percent interest in the LLC. Cullen is similarly unaware of the T. Eugene Smith Revocable Trust, the Paul V. Zehfuss Revocable Trust and/or the Sitta M. Zehfuss Revocable Trust being limited partners or members of the LLC. A371-72.

45

(Answer to Countercl. ¶ 36; A289). Additional distributions are likely forthcoming. While the district court agreed that Cullen is entitled to receive the distributions, regardless of whether he is acting as personal representative of the Probate Estate or as trustee of the Family Trust or the Cullen Trust (A577-78), because the count was brought pursuant to pendent jurisdiction, the lower court dismissed the count without prejudice. A547. This count should be reinstated on remand.

The tort of conversion "encompasses 'any wrongful exercise or assumption of authority…over another's goods, depriving him of their possession; [and any] act of dominion wrongfully asserted over property in denial of the owner's right or inconsistent with it.'" *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305, 440 S.E.2d 902, 905 (1994) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75, 92 S.E.2d 359, 365 (1956)). "A cause of action for conversion lies independent of an action in contract and may provide a separate basis, distinct from contract, upon which one partner may sue another." *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 344, 576 S.E.2d 438, 443 (2003).

A partner's unjustified refusal to pay over the profits due to another partner may form the basis of a valid conversion claim. *PGI, Inc.*, 265 Va. at 344, 576 S.E.2d at 443; s*ee also Greenfeld v. Stitely*, 2007 Va. Cir. LEXIS 7, 46 (Va. Cir. Ct. Jan. 5, 2007) (Defendants liable for conversion where they acted unlawfully and without authority to dissolve a limited liability partnership and transfer its

assets to a professional limited liability partnership for the purpose of converting plaintiff's assets).

To the extent the district court is correct that the Subject Interest became an asset of the Probate Estate at Kirsch's death, then that asset and distributions from the asset are vested in Cullen as personal representative. *See* MD. CODE ANN. EST. & TRUSTS ("ET") § 1-301.  The request by a personal representative for delivery of property possessed by the heir or legatee is conclusive evidence, in an action against the heir or legatee for possession, that the possession of the property by the personal representative is reasonably necessary for purposes of administration.  ET § 7-102.  Thus, all distributions belong to Kirsch's Probate Estate and must be distributed to Cullen. *Id*. Alternatively, if this Court finds that the Subject Interest is an asset of the Family Trust or Cullen Trust, or remands the matter for further proceedings to determine which estate the Subject Interest is an asset, then the distributions should be paid over to Cullen in the applicable fiduciary capacity.  In no event is the Partnership entitled to retain possession of these funds.

### b.  Negligence, Fraud and Intentional Interference

In Count VI (sic)[35] of the Counterclaim,    Cullen brought an action for negligence. (A216-17),  In Count VI, Cullen alleged fraud and intentional

---

[35] Negligence, the fifth count in the counterclaim, was inadvertently labeled "VI." A215-17.

47

interference with contract. (A217-19), These claims were based on the misstatements, and what Cullen contends were intentional misrepresentations and omissions arising from Zehfuss' dislike and personal animus toward Cullen and his disassociation from his sister, which motivated Zehfuss to mislead Kirsch about her rights with respect to the Subject Interest. These counts are premised on disputed material fact and witness credibility (in particular Zehfuss)[36]. A417-33. In granting summary judgment to Appellees, the district court dismissed these claims without explanation. A44-47. The parties fully briefed those issues below which contentions and arguments are incorporated herein by this reference. A403-5; A408-14; A472-3, Cullen contends that these actions survive even if this court supports the district court's ruling regarding the transfers of the Subject Interest at issue. To the extent that this court determines procedural flaws in the Counterclaim, Cullen requests the right to amend its pleadings. Fed. R. Civ. P. 15.

### VIII. District Court Prematurely Granted Motion For Summary Judgment Where Appellant Did Not Have An Opportunity to Conduct Discovery

"As a general rule, summary judgment is appropriate only after 'adequate time for discovery.'" *Evans*, 80 F.3d at 961 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the party opposing the summary judgment motion "has not had the opportunity to discover information that is essential to his opposition,"

---

[36] Zehfuss' contentions below were largely based on hearsay. A164; A335; A539.

48

the district court must deny the summary judgment motion. *Anderson*, 477 U.S. at 250 n.5; *see also* Federal Rule Civil Procedure 56(f).

Here, Appellees filed their motion for summary judgment the day before the district court entered an order opening discovery (Dkt. 34). Cullen, however, is in need of discovery responses in order to impugn the credibility and establish the personal animus of Plaintiff's affiants. *See* Affidavit of Roger A. Hayden, II, Esq. A454-56. As a matter of basic equity, and in accordance with Fed. R. Civ. P. 56(d), the district court should have either denied Appellee's motion without prejudice or deferred consideration of the same until discovery had taken place. *See CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1076 (E.D. Mich. 2011) (prior to entry of summary judgment, plaintiffs "should have an opportunity to depose or serve interrogatories upon [affiant], whose declaration is Defendants' primary evidence supporting their [legal] theory"); *see also* 11 Jeffrey W. Stempel & Steven S. Gensler, *Moore's Federal Practice* § 56.60 (3d ed. 2010) (the better course for a court faced with a pre-discovery summary judgment motion will often be to deny the motion without prejudice or to defer consideration until some discovery has occurred, relief that is authorized by Rule 56(d)).

49

## IX.    District Court Lacked Personal and Subject Matter Jurisdiction

### a.  Subject Matter Jurisdiction

"A federal court may not exercise diversity jurisdiction to probate a will, to administer an estate, or to dispose of property in custody of a state probate court." *See* 15-102 James Wm. Moore et al., *Moore's Federal Practice* § 102.92[1]; *Foster v. Carlin*, 200 F.2d 943, 947 (4th Cir. 1953); *Markham v. Allen*, 326 U.S. 490, 494 (1946).  Determining whether a case falls within the probate exception involves a two-part inquiry: first, whether the action requires the probate or annulment of a will or the administration of a decedent's estate; and second, whether the action requires the court to dispose of property that is in the custody of a state probate court.  *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 532 (S.D.N.Y. 2010) (quoting *Marshall v. Marshall*, 547 U.S. 293, 311 (U.S. 2006)).  Appellee's Complaint falls under both categories of the probate exception.

Appellee sought an order that the Subject Interest must pass through Kirsch's Estate and be distributed under Maryland's laws of intestacy. A17-9.  If this is true, the Subject Interest is vested in Mr. Cullen as personal representative. *See* MD. E & T § 1-301.  Thus, Appellee sought relief for a matter that is directly within the exclusive jurisdiction of the Maryland Probate Court.  A17-9; *See* MD. E & T § 2-102 (vesting Maryland's Orphan's court with jurisdiction to conduct judicial probate, direct conduct of personal representative and otherwise pass

50

orders required to administer an estate); *See also* MD. E & T § 7-401.  Appellee's requests for a declaration governing Mr. Cullen's conduct as personal representative of the Kirsch Estate or as trustee of trusts created by Kirsch is improper in a Federal District Court.  *See also* A117-45; A156-163.

### b.  Personal Jurisdiction

Appellee invoked the Federal District Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 on the basis that Plaintiff is a resident of Virginia and Defendant, Mr. Cullen, in his fiduciary capacities, is a resident of Maryland.[37] A13.  Kirsch died a resident of Maryland and her estate is being probated before a Maryland court. A133-4.

Due process requires that, before this Court may exercise personal jurisdiction over a non-resident Defendant, it must determine that: (a) an applicable statute[38] confers jurisdiction by authorizing service of process on Defendant, and (b) to comport with due process standards of the United States Constitution, the defendant must have sufficient minimum contacts with the forum jurisdiction, and the court's exercise of jurisdiction must not offend the traditional notions of fair play and substantial justices.  *Reynolds & Reynolds Holdings, Inc. v. Data*

---

[37] The parties agree the value of the Subject Interest exceeds $75,000.

[38] Va. Code Ann. § 8.01-328.1.

51

*Supplies, Inc.*, 301 F. Supp.2d 545, 549 (E.D. Va. 2004) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1964)).

Under the "minimum contacts" analysis, jurisdiction over a non-resident defendant in a Virginia court may be satisfied in two ways: specific jurisdiction or general jurisdiction. The court may exercise specific jurisdiction where the cause of action "arises out of" or "relates to" defendant's contacts with the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)). A defendant's contacts with the forum must be significantly more extensive before the court can exercise general jurisdiction over a defendant as to causes of action not arising out of or related to the defendant's contacts with the forum state. *Id.* (citing *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-16, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)). To maintain general jurisdiction, a nonresident must have substantial contacts with the forum state that are "continuous and systematic." *Id.*

Virginia's long arm statute extends to the limits of due process. *See Danville Plywood Corp. v. Plain & Fancy Kitchens*, 218 Va. 533, 534-35, 238 S.E.2d 800 (1977). However, the nonresident must "engage in some purposeful activity in Virginia" before jurisdiction may be exercised. *Reynolds & Reynolds Holdings., Inc*, 301 F. Supp.2d at 550 (citing *Danville Plywood*, 218 Va. at 534-35, 238 S.E.2d 800). The "basic analysis is not altered when the defendant's property is

52

found in the forum state. The Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977), eliminated all doubt that the minimum contacts standard in International Shoe governs *in rem* and *quasi in rem* actions as well as *in personam* actions." *Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 213 (4th Cir. 2002).

"The party invoking the court's jurisdiction bears the burden of establishing the necessary jurisdiction facts, e.g. the existence of minimum contacts between the defendant and the forum state." *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 Fed. Appx. 889, 890 (4th Cir. 2007) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); s*ee also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182 (1936) (noting "It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case.").

Here, the Complaint was completely devoid of any fact linking Defendants to the forum, other than to state that Plaintiff entity is organized in Virginia. A11-9. To the contrary, the Complaint establishes that Defendants, as well as Kirsch before her death, are and were residents of Maryland. *Id.* at ¶¶ 4, 26. Further, the limited partnership interest in contention was owned, held, and enjoyed by Kirsch during her lifetime in Maryland. The allegations of the Complaint demonstrate that the limited partnership interest is presently owned and held by the Cullen Trust or, at a minimum, by Kirsch's estate, all located in Maryland. *Id.* at ¶¶ 4, 19.

A trust is comparable to a corporation, in that jurisdiction over an individual trustee cannot be based on the contacts of the trust. *Schneider v. Cate*, 405 F. Supp.2d 1254, 1261 (D. Colo. 2005).  Courts will consider where a trust is administered, where a trust was formed, the character of the ownership in property held in trust, and the location of the trust beneficiaries when analyzing the existence of general jurisdiction.  *Id.*  Specific jurisdiction must be based on actions by the defendant himself that create a substantial connection with the forum state.  The mere expectancy of a property interest in one state is not such an affirmative act to create specific jurisdiction.  *Id.* at 1262; *See also* A117-45; A156-163.

Based upon the foregoing, the district court erred in denying the Motion to Dismiss (A196-98).  This court must find that the Complaint did not allege sufficient facts to establish a prima facie specific or general jurisdictional nexus; dismissal is required.

## X.    District Court Should Have Ordered Zehfuss Joined as a Necessary Party

The district court erred in not requiring the joinder of Zehfuss as a necessary party to resolve ownership of a disputed partnership interest.  A117-19.  The declaratory judgment action by the Partnership specifically sought relief to the direct personal interest and benefit of Zehfuss including a ruling that the Subject Interest passes outside Kirsch's will to Zehfuss by intestate succession. A11-9. To

54

the extent that the district court rules adversely to the claims of relief sought by the Partnership, Zehfuss can bring a new action, including in Maryland courts, seeking rulings inconsistent with the rulings of the district court. Therefore, to the extent this court remands this matter to the district court for further proceedings, it should order that Zehfuss be made a necessary party.

## CONCLUSION

Appellant Cullen seeks the reversal of the rulings of the district court, judgment from this court and remand to the district court for entry of judgment in accordance with the rulings of this court and to commence proceedings as follows:

1. Dismissing this action for lack of subject matter jurisdiction and personal jurisdiction, or, to the extent this action is not dismissed:

2. Declaring that: (a) the transfer and assignment of the Subject Interest to the Cullen Trust was a lawful and binding assignment, the Subject Interest is therefore vested in Wayne Cullen as trustee of the Cullen Trust and that he is a member of the LLC, or if the LLC fails, a limited partner of the Partnership holding a 21 percent interest, and (b) the economic rights contained within the partnership or membership interest are freely alienable.

3. Ordering that all distributions related to the Subject Interest be paid over promptly to Cullen as Trustee of the Cullen Trust.

4. Order that the LLC and/or Partnership promptly provide an accounting to Cullen and allow him to inspect its books and records.

5. Set aside the conversion of the Partnership to the LLC and reinstate the Partnership.

6. Reinstate Counts VI (sic) and VI of the Counterclaim for negligence, fraud and intentional interference of contract and order the matter shall proceed to trial in accordance with the applicable rules of procedure including discovery.

7. Granting such other and further relief as this Court may deem proper.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Appellant respectfully requests oral argument. This appeal raises numerous issues of complex fact and law, including an issue of first impression regarding the free alienability of the economic component of a partnership interest. Oral discussion of the facts and applicable precedent would benefit the court.

Respectfully submitted,

PASTERNAK & FIDIS, P.C.

/s/ Roger A. Hayden, II
Roger A. Hayden, II, Esq.

/s/ Nathan S. Brill
Nathan S. Brill, Esq.

7735 Old Georgetown Road
Suite 1100
Bethesda, Maryland  20814
Telephone:  (301) 656-8850
Facsimile:  (301) 656-3053
rah2@pasternakfidis.com
nbrill@pasternakfidis.com
*Counsel for Appellant Wayne Cullen, Personal Representative of the Estate of Diane Z. Kirsch; Trustee of the Diane Z. Kirsch Family Trust; Trustee of the Separate Trust for the Benefit of Wayne Cullen*

57

# STATUTORY ADDENDUM

# ADDENDUM TABLE OF CONTENTS

*Addendum*
*Page No.*

28 U.S.C §1332: Diversity of Citizenship, amount in controversy; costs................1

28 U.S.C. §1291 : Final Decisions of District Courts ................................6

28 U.S. Code § 1367 - Supplemental jurisdiction ................................6

Colo. Rev. Stat. § 7-60-127 (1986) : Assignment of partner's interest ....................7

Fed. R. App. P. 4(a)(1):  Appeal as of Right ................................8

Fed. R. Civ. P. 15: Amended and Supplemental Pleadings.....................8

Fed. R. Civ. P. 56(d): Summary Judgment ................................10

Fed. R. Civ. Pro. 56(c)(4): Summary Judgment ................................10

MD. CODE ANN. EST. & TRUSTS § 1-301: All property of decedent;
devolution at death................................11

MD. CODE ANN. EST. & TRUSTS § 2-102: Jurisdiction of court ................11

MD. CODE ANN. EST. & TRUSTS § 7-102:  Possession and control of estate ...........12

MD. CODE ANN. EST. & TRUSTS § 7-401: General powers ................12

Va. Code § 13.1-1023: Operating agreement. ................................17

Va. Code § 13.1-1023 (B)(1):  Operating agreement. ................................19

Va. Code § 13.1-1023(C)(2):  Operating agreement. ................................19

Va. Code § 13.1-1047(A):  Judicial dissolution. ................................19

Va. Code Ann. § 13.1-1028:  Information and records. ................................19

Va. Code Ann. § 50:73.47:  Right of assignee to become limited partner. ............21

Va. Code Ann. § 50-73.106: Partner's transferable interest in partnership. ............21

Va. Code Ann. § 50-73.107: Transfer of partner's transferable interest................21

Va. Code Ann. § 50-73.22:1:  Admission of limited partners................................22

Va. Code Ann. § 50-73.47: Right of assignee to become limited partner.............23

Va. Code Ann. § 50-73.80(F): ................................24

Va. Code Ann. § 8.01-328.1: When personal jurisdiction over person may be
exercised. ................................24

Va. Code Ann. 50-73.45:  Assignment of partnership interest................................26

Virginia Code § 50-73.48:  Merger. ................................26

.

**28 U.S.C §1332: Diversity of Citizenship, amount in controversy; costs**

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

> (1) citizens of different States;

> (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

> (4) a foreign state, defined in section 1603 (a) of this title, as plaintiff and citizens of a State or of different States.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) For the purposes of this section and section 1441 of this title—

> (1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of—

> > (A) every State and foreign state of which the insured is a citizen;

> > (B) every State and foreign state by which the insurer has been incorporated; and

> > (C) the State or foreign state where the insurer has its principal place of business; and

> > (2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal

representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

(d)

(1) In this subsection—

(A) the term "class" means all of the class members in a class action;

(B) the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

(C) the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

(D) the term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

(3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

(4) A district court shall decline to exercise jurisdiction under paragraph (2)—

(A)

(i) over a class action in which—

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

(5) Paragraphs (2) through (4) shall not apply to any class action in which—

(A) the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

(B) the number of members of all proposed plaintiff classes in the aggregate is less than 100.

(6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

(7) Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

(8) This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action.

(9) Paragraph (2) shall not apply to any class action that solely involves a claim—

(A) concerning a covered security as defined under 16(f)(3) [1] of the Securities Act of 1933 (15 U.S.C. 78p (f)(3) [2] ) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb (f)(5)(E));

(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

(C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b (a)(1)) and the regulations issued thereunder).

(10) For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

(11)

    (A) For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

    (B)

    (i) As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711 (2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

    (ii) As used in subparagraph (A), the term "mass action" shall not include any civil action in which—

    (I) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

    (II) the claims are joined upon motion of a defendant;

    (III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

    (IV) the claims have been consolidated or coordinated solely for pretrial proceedings.

    (C)

    (i) Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

    (ii) This subparagraph will not apply—

    (I) to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or

(II) if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure.

(D) The limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.

(e) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

## 28 U.S.C. §1291 : Final Decisions of District Courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292 (c) and (d) and 1295 of this title.

## 28 U.S. Code § 1367 - Supplemental jurisdiction

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules,

when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

>   (1) the claim raises a novel or complex issue of State law,

>   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

>   (3) the district court has dismissed all claims over which it has original jurisdiction, or

>   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

## Colo. Rev. Stat. § 7-60-127 (1986) : Assignment of partner's interest

(1) A conveyance by a partner of the partner's interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with the assignee's contract the profits to which the assigning partner would otherwise be entitled.

(2) In a dissolution of the partnership, the assignee is entitled to receive the assignor's interest and may require an account only from the date of the last account agreed to by all the partners.

**Fed. R. App. P. 4(a)(1):  Appeal as of Right**

(a) Appeal in a Civil Case.

   (1) *Time for Filing a Notice of Appeal.*

    (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

    (B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

    (i) the United States;

    (ii) a United States agency;

    (iii) a United States officer or employee sued in an official capacity; or

    (iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

    (C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

**Fed. R. Civ. P. 15: Amended and Supplemental Pleadings**

(a) Amendments.

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

(b) Amendments to Conform to the Evidence.

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

(c) Relation Back of Amendments.

An amendment of a pleading relates back to the date of the original pleading when
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
The delivery or mailing of process to the United States Attorney, or United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of subparagraphs (A) and (B) of this paragraph (3) with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

(d) Supplemental Pleadings.

Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.


**Fed. R. Civ. P. 56(d): Summary Judgment**

(d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.


**Fed. R. Civ. Pro. 56(c)(4): Summary Judgment**

(c) Procedures.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**MD. CODE ANN. EST. & TRUSTS § 1-301: All property of decedent; devolution at death**

(a) In general. -- All property of a decedent shall be subject to the estates of decedents law, and upon the person's death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution, without any distinction, preference, or priority as between real and personal property.

(b) Personal property. -- The court may determine questions of title to personal property not exceeding $ 50,000 in value for the purpose of determining what personal property is properly includable in an estate that is the subject of a proceeding before the court.


**MD. CODE ANN. EST. & TRUSTS § 2-102:  Jurisdiction of court**

(a) Powers. -- The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The court may not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred.

(b) Rule-making authority. -- The court may not establish rules of practice and procedure inconsistent with the Maryland Rules or with any statute.

(c) Rights of interested person. -- An interested person may petition the court to resolve any question concerning an estate or its administration.

(d) Construction. -- This section may not be construed to limit the court's authority under § 1-301 (b) of this article.

**MD. CODE ANN. EST. & TRUSTS § 7-102:  Possession and control of estate**

A personal representative has a right to and shall take possession or control of the estate of the decedent, except that property in the possession of the person presumptively entitled to it as heir or legatee shall be possessed by the personal representative only when reasonably necessary for purposes of administration. The request by a personal representative for delivery of property possessed by the heir or legatee is conclusive evidence, in an action against the heir or legatee for possession, that the possession of the property by the personal representative is reasonably necessary for purposes of administration. The personal representative may maintain an action to recover possession of property or to determine its title.

**MD. CODE ANN. EST. & TRUSTS § 7-401: General powers**

(a) Exercise of powers. –

(1) In the performance of a personal representative's duties pursuant to § 7-101 of this title, a personal representative may exercise all of the power or authority conferred upon the personal representative by statute or in the will, without application to, the approval of, or ratification by the court.

(2) Except as validly limited by the will or by an order of court, a personal representative may, in addition to the power or authority contained in the will and to other common-law or statutory powers, exercise the powers enumerated in this section.

(b) Hold assets. -- He may retain assets owned by the decedent pending distribution or liquidation, including those in which the representative is personally interested or which are otherwise improper for trust investment.

(c) Hold securities in name of nominee. -- He may hold a security in the name of a nominee or in other form without disclosure of the interest of the estate. In this case, the personal representative is liable for a wrongful act of the nominee in connection with the security held.

(d) Receive assets. -- He may receive assets from fiduciaries or other sources.

(e) Deposit funds. -- He may deposit funds for the account of the estate, including money received from the sale of assets, in checking accounts, in insured interest-bearing accounts, or in short-term loan arrangements which may be reasonable for use by a trustee.

(f) Deposit assets in restricted accounts. -- He may agree to deposit assets of the estate with a financial institution so that the assets cannot be withdrawn or transferred without:

  (1) The written consent of the surety on the bond; or

  (2) An order of court.

(g) Satisfy charitable pledges. -- He may satisfy written charitable pledges of the decedent.

(h) Pay or compromise claims. -- He may pay a valid claim as provided in this article or effect a fair and reasonable compromise with a creditor or obligee, or extend or renew an obligation due by the estate.

(i) Pay funeral expenses. -- He may pay the funeral expenses of the decedent in accordance with the procedures provided in § 8-106 of this article, including the cost of burial space and a tombstone or marker, and the cost of perpetual care.

(j) Pay taxes. -- He may pay taxes, assessments, and other expenses incident to the administration of the estate.

(k) Insure property. -- He may insure the property of the estate against damage, loss, and liability, and himself, as personal representative, against liability in respect to third persons.

(l) Vote stocks. -- He may vote stocks or other securities in person or by general or limited proxy.

(m) Sell or exercise stock rights. -- He may sell or exercise stock subscription, conversion or option rights, consent to or oppose, directly or through a committee or agent, the reorganization, consolidation, merger, dissolution, or liquidation of a corporation or other business enterprise.

(n) Sell, purchase, or otherwise deal with property. -- He may invest in, sell, mortgage, pledge, exchange, or lease property.

(o) Borrow. -- He may borrow money.

(p) Deal with debtor of estate. -- He may release or terminate a mortgage or security interest, if the obligation secured by the mortgage or security interest was fully satisfied during the lifetime of the decedent or during the administration of the estate. He may also extend or renew any obligation owed to the estate.

(q) Pay encumbrances. -- If assets of the estate are encumbered by a mortgage, pledge, lien, or other security interest and if it appears to be in the best interests of the estate, he may pay the encumbrance, or convey or transfer the assets to the creditor in satisfaction of his security interest, in whole or in part, whether or not the holder of the encumbrance has filed a claim.

(r) Convey reversions. -- Regardless of a contrary provision in the will, he may execute, upon the written demand of the owner of a redeemable leasehold or subleasehold estate, a full and valid conveyance of the reversion or subreversion held by the estate.

(s) Continue business. -- He may continue an unincorporated business or venture in which the decedent was engaged at the time of his death:

    (1) In the same business form for a period of not more than four months from the date of appointment of a personal representative, where continuation is a reasonable means of preserving the value of the business including goodwill;

    (2) In the same business form for an additional period of time that may be approved by order of court, in a proceeding to which all persons interested in the estate are parties; or

    (3) Throughout the period of administration, if the business is incorporated after the death of the decedent.

(t) Incorporate a business. -- He may incorporate a business or venture in which the decedent was engaged at the time of his death if none of the probable distributees of the business who are competent adults objects to its incorporation and retention in the estate.

(u) Convert sole proprietorship. -- He may convert a sole proprietorship the decedent was engaged in at the time of his death to a limited liability company and may become a limited partner in any partnership or a member in any limited liability company, including a single member limited liability company.

(v) Perform contracts. -- He may perform the contracts of the decedent that continue as obligations of the estate, and execute and deliver deeds or other documents under circumstances as the contract may provide.

(w) Exercise options in life insurance policy. -- He may exercise options, rights, and privileges contained in a life insurance policy, annuity, or endowment contract constituting property of the estate, including the right to obtain the cash surrender value, convert the policy to another type of policy, revoke a mode of settlement, and pay a part or all of the premiums on the policy or contract.

(x) Employ specialists. -- He may employ, for reasonable compensation auditors, investment advisors, or persons with special skills, to advise or assist him in the performance of his administration duties.

(y) Prosecute or defend litigation. -- He may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted, except that:

> (1) A personal representative may not institute an action against a defendant for slander against the decedent during the lifetime of the decedent.

> (2) In an action instituted by the personal representative against a tort-feasor for a wrong which resulted in the death of the decedent, the personal representative may recover the funeral expenses of the decedent up to the amount allowed under § 8-106(c) of this article in addition to other damages recoverable in the action.

(z) Use title "executor" or "administrator". -- If the decedent died testate, he may designate himself on documents as an executor, or if the decedent died intestate, as an administrator.

(aa) Make distributions. -- He may make partial and final distributions, in cash, in kind, or both, from time to time during the administration.

Statutory Addendum Page 15

(bb) Notice of disposition of medical records of patients of physician, etc., decedent. -- If the estate is of a physician, podiatrist, optometrist, or dentist who was a sole practitioner, the administrator shall follow the notice requirements under § 4-305 of the Health - General Article before the destruction or transfer of any medical records of a patient of the decedent.

(cc) Compliance with environmental laws. –

    (1) To comply with an environmental law, a personal representative may:

        (i) Inspect property held by the personal representative, including any type of interest in a sole proprietorship, partnership, limited liability company, or corporation, and any assets owned by a sole proprietorship, partnership, limited liability company, or corporation to determine compliance with an environmental law and respond to an actual or potential environmental liability relating to the property;

        (ii) Before or after the initiation of a claim or a governmental enforcement action, take any action necessary to prevent, abate, or otherwise remedy an actual or potential environmental liability relating to property held by the personal representative;

        (iii) Settle or compromise at any time a claim against the estate based on an alleged environmental liability that may be asserted by any person; and

        (iv) Pay from the estate the costs of an inspection, review, study, abatement, response, cleanup, or other remedial action that involves an environmental liability as provided under § 15-524 of this article.

    (2) If a personal representative acts prudently and in good faith, the personal representative is not liable to a person with an interest in assets held by the personal representative for a decrease in the value of the assets for taking action under this subsection or otherwise taking action to comply with an environmental law or reporting requirement.

    (3) Acceptance by the personal representative of property or failure by the personal representative to take action under this subsection does not imply

that there is or may be liability under an environmental law with respect to any property.

(dd) Donation of conservation easement. -- A personal representative may donate a conservation easement on any real property in order to obtain the benefit of the estate tax exclusion allowed under § 2031(c) of the United States Internal Revenue Code of 1986, as amended, if:

> (1) The will authorizes or directs the personal representative to donate a conservation easement on the real property; or

> (2) Each interested person who has an interest in the real property that would be affected by the conservation easement consents in writing to the donation.

## Va. Code § 13.1-1023: Operating agreement.

A. Authority.

> 1. The members of a limited liability company may enter into any operating agreement to regulate or establish the affairs of the limited liability company, the conduct of its business and the relations of its members. A limited liability company is bound by its operating agreement whether or not the limited liability company executes the operating agreement. An operating agreement may contain any provisions regarding the affairs of a limited liability company and the conduct of its business to the extent that such provisions are not inconsistent with the laws of the Commonwealth or the articles of organization. An operating agreement may provide rights to any person, including a person who is not a party to the operating agreement, to the extent set forth in the operating agreement.

> 2. If a limited liability company has only one member, an operating agreement shall be deemed to include:

>> a. Any writing signed by the member, without regard to whether the writing constitutes an agreement, that relates to the affairs of the limited liability company and the conduct of its business.

>> b. Any agreement, regardless of whether the agreement is in writing, between the member and the limited liability company, that relates to

the affairs of the limited liability company and the conduct of its business, provided that the limited liability company has a manager that is a person other than the member.

B. Adoption and amendment.

1. An operating agreement must initially be agreed to by all of the members. Unless the articles of organization or a written operating agreement specifically requires otherwise, an operating agreement need not be in writing.

2. If the articles of organization or an operating agreement does not provide for the manner by which an operating agreement may be amended, then all of the members must agree to any amendment of an operating agreement.

3. If the articles of organization or the operating agreement provide for the manner by which an operating agreement may be amended, including by requiring the approval of a person who is not a party to the operating agreement or requiring the satisfaction of conditions, an operating agreement may be amended only in that manner or as otherwise permitted by law; provided that (i) the approval of any person may be waived by that person and (ii) any conditions may be waived by all persons for whose benefit the conditions were intended.

C. Enforcement of operating agreement.

1. A court of equity may enforce an operating agreement by injunction or by such other relief that the court in its discretion determines to be fair and appropriate in the circumstances.

2. As an alternative to injunctive or other equitable relief, when the provisions of § 13.1-1047 are applicable, the court may order dissolution of the limited liability company.

**Va. Code § 13.1-1023 (B)(1):  Operating agreement.**

B. Adoption and amendment.

1. An operating agreement must initially be agreed to by all of the members. Unless the articles of organization or a written operating agreement specifically requires otherwise, an operating agreement need not be in writing.

**Va. Code § 13.1-1023(C)(2):  Operating agreement.**

C. Enforcement of operating agreement.

2. As an alternative to injunctive or other equitable relief, when the provisions of § 13.1-1047 are applicable, the court may order dissolution of the limited liability company.

**Va. Code § 13.1-1047(A):  Judicial dissolution.**

A. On application by or for a member, the circuit court of the locality in which the registered office of the limited liability company is located may decree dissolution of a limited liability company if it is not reasonably practicable to carry on the business in conformity with the articles of organization and any operating agreement.

**Va. Code Ann. § 13.1-1028:  Information and records.**

A. Each limited liability company shall keep at its principal office the following:

> 1. A current list of the full name and last known business address of each member, in alphabetical order;

> 2. A copy of the articles of organization and the certificate of organization, and all articles of amendment and certificates of amendment thereto;

> 3. Copies of the limited liability company's federal, state and local income tax returns and reports, if any, for the three most recent years;

4. Copies of any then-effective written operating agreement and of any financial statements of the limited liability company for the three most recent years; and

5. Unless contained in a written operating agreement, a writing setting out:

> a. The amount of cash and a description and statement of the agreed value of the other property or services contributed by each member and which each member has agreed to contribute;

> b. The times at which or events on the happening of which any additional contributions agreed to be made by each member are to be made;

> c. Any right of a member to receive, or of the limited liability company to make, distributions to a member which include a return of all or any part of the member's contribution; and

> d. Any events upon the happening of which the limited liability company is to be dissolved and its affairs wound up.

B. Each member has the right, upon reasonable request, to:

1. Inspect and copy any of the limited liability company records required to be maintained by this section; and

2. Obtain from the manager or managers, or if the limited liability company has no manager or managers, from any member or other person with access to such information, from time to time upon reasonable demand (i) true and full information regarding the state of the business and financial condition of the limited liability company, (ii) promptly after becoming available, a copy of the limited liability company's federal, state and local income tax returns for each year, and (iii) other information regarding the affairs of the limited liability company, except to the extent the information demanded is unreasonable or otherwise improper under the circumstances.

C. Notwithstanding the provisions of subsections A and B, the rights of a member to obtain information as provided in such subsections may be restricted in writing in an original operating agreement or any subsequent written amendment to an operating agreement approved or adopted by all of the members and in compliance with any applicable requirements of the operating agreement.

**Va. Code Ann. § 50:73.47:  Right of assignee to become limited partner.**

A. An assignee of a partnership interest, including an assignee of a general partner, may become a limited partner if and to the extent that (i) the assignor gives the assignee that right in accordance with authority described in writing in the partnership agreement, or (ii) all other partners consent.

B. An assignee who has become a limited partner has, to the extent assigned, the rights and powers, and is subject to the restrictions and liabilities, of a limited partner under the partnership agreement and this chapter. An assignee who becomes a limited partner also is liable for the obligation of his assignor to make and return contributions as provided in Articles 5 (§ 50-73.32 et seq.) and 6 (§ 50-73.36 et seq.) of this chapter. However, the assignee is not obligated for liabilities unknown to the assignee at the time he became a limited partner.

C. If an assignee of a partnership interest becomes a limited partner, the assignor is not released from his liability to the limited partnership under §§ 50-73.18 and 50-73.33.

**Va. Code Ann. § 50-73.106: Partner's transferable interest in partnership.**

The only transferable interest of a partner in the partnership is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions. The interest is personal property.

**Va. Code Ann. § 50-73.107: Transfer of partner's transferable interest.**

A. A transfer, in whole or in part, of a partner's transferable interest in the partnership:

> 1. Is permissible;

> 2. Does not by itself cause the partner's dissociation or a dissolution and winding up of the partnership business; and

> 3. Does not, as against the other partners or the partnership, entitle the transferee, during the continuance of the partnership, to participate in the

management or conduct of the partnership business, to require access to information concerning partnership transactions, or to inspect or copy the partnership books or records.

B. A transferee of a partner's transferable interest in the partnership has a right:

    1. To receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled;

    2. To receive upon the dissolution and winding up of the partnership business, in accordance with the transfer, the net amount otherwise distributable to the transferor; and

    3. To seek under subdivision 6 of § 50-73.117 a judicial determination that it is equitable to wind up the partnership business.

C. In a dissolution and winding up, a transferee is entitled to an account of partnership transactions only from the date of the latest account agreed to by all of the partners.

D. Upon transfer, the transferor retains the rights and duties of a partner other than the interest in distributions transferred.

E. A partnership need not give effect to a transferee's rights under this section until it has notice of the transfer.

F. A transfer of a partner's transferable interest in the partnership in violation of a restriction or prohibition on transfer contained in the partnership agreement is ineffective as to a person having notice of the restriction at the time of transfer.

## Va. Code Ann. § 50-73.22:1: Admission of limited partners.

A. A person becomes a limited partner on the later of:

    1. The date the original certificate of limited partnership is filed; or

    2. The date stated in the records of the limited partnership as the date that person becomes a limited partner.

B. After the filing of a limited partnership's initial certificate of limited partnership, a person may be admitted as an additional limited partner:

> 1. In the case of a person acquiring a partnership interest directly from the limited partnership, upon compliance with the partnership agreement or, if the partnership agreement does not so provide, upon the written consent of all partners; and

> 2. In the case of an assignee of a partnership interest of a partner who has the power, as provided in § 50-73.47, to grant the assignee the right to become a limited partner, upon the exercise of that power and compliance with any conditions limiting the grant or exercise of the power.

**Va. Code Ann. § 50-73.47: Right of assignee to become limited partner.**

A. An assignee of a partnership interest, including an assignee of a general partner, may become a limited partner if and to the extent that (i) the assignor gives the assignee that right in accordance with authority described in writing in the partnership agreement, or (ii) all other partners consent.

B. An assignee who has become a limited partner has, to the extent assigned, the rights and powers, and is subject to the restrictions and liabilities, of a limited partner under the partnership agreement and this chapter. An assignee who becomes a limited partner also is liable for the obligation of his assignor to make and return contributions as provided in Articles 5 (§ 50-73.32 et seq.) and 6 (§ 50-73.36 et seq.) of this chapter. However, the assignee is not obligated for liabilities unknown to the assignee at the time he became a limited partner.

C. If an assignee of a partnership interest becomes a limited partner, the assignor is not released from his liability to the limited partnership under §§ 50-73.18 and 50-73.33.

**Va. Code Ann. § 50-73.80(F):**

A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

**Va. Code Ann. § 8.01-328.1: When personal jurisdiction over person may be exercised.**

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or things in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably have expected such person to use, consume, or be affected by the goods in this Commonwealth, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;

6. Having an interest in, using, or possessing real property in this Commonwealth;

7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;

8. Having (i) executed an agreement in this Commonwealth which obligates the person to pay spousal support or child support to a domiciliary of this Commonwealth, or to a person who has satisfied the residency requirements in suits for annulments or divorce for members of the armed forces or foreign service officers of the United States pursuant to § 20-97provided proof of service of process on a nonresident party is made by a law-enforcement officer or other person authorized to serve process in the jurisdiction where the nonresident party is located, (ii) been ordered to pay spousal support or child support pursuant to an order entered by any court of competent jurisdiction in this Commonwealth having in personam jurisdiction over such person, or (iii) shown by personal conduct in this Commonwealth, as alleged by affidavit, that the person conceived or fathered a child in this Commonwealth;

9. Having maintained within this Commonwealth a matrimonial domicile at the time of separation of the parties upon which grounds for divorce or separate maintenance is based, or at the time a cause of action arose for divorce or separate maintenance or at the time of commencement of such suit, if the other party to the matrimonial relationship resides herein; or

10. Having incurred a liability for taxes, fines, penalties, interest, or other charges to any political subdivision of the Commonwealth.

Jurisdiction in subdivision 9 is valid only upon proof of service of process pursuant to § 8.01-296 on the nonresident party by a person authorized under the provisions of § 8.01-320. Jurisdiction under subdivision 8 (iii) of this subsection is valid only upon proof of personal service on a nonresident pursuant to § 8.01-320.

B. Using a computer or computer network located in the Commonwealth shall constitute an act in the Commonwealth. For purposes of this subsection, "use" and "computer network" shall have the same meanings as those contained in § 18.2-152.2.

C. When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him; however, nothing contained in this chapter shall limit, restrict or otherwise affect the jurisdiction of any court of this Commonwealth over foreign corporations which are subject to service of process pursuant to the provisions of any other statute.

**Va. Code Ann. 50-73.45:  Assignment of partnership interest.**

Except as provided in the partnership agreement, a partnership interest is assignable in whole or in part. An assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or to exercise any rights of a partner. An assignment entitles the assignee to receive, to the extent assigned, only the distribution to which the assignor would be entitled. Except as provided in the partnership agreement, a partner ceases to be a partner upon assignment of all his partnership interest.

**Virginia Code § 50-73.48:  Merger.**

A. Pursuant to a written plan of merger, a domestic limited partnership that has filed a certificate of limited partnership with the Commission that is not canceled may merge with one or more domestic or foreign partnerships, limited partnerships, limited liability companies, business trusts or corporations if:

> 1. The merger is not prohibited by the partnership agreement of any domestic limited partnership that is a party to the merger, and each domestic limited partnership party to the merger approves the plan of merger in accordance with § 50-73.48:2 and complies with the terms of its partnership agreement;

> 2. Each domestic partnership that is a party to the merger complies with the applicable provisions of Article 9 (§ 50-73.124et seq.) of Chapter 2.2 of this title;

> 3. Each domestic limited liability company that is a party to the merger complies with the applicable provisions of Article 13 (§ 13.1-1070 et seq.) of Chapter 12 of Title 13.1;

> 4. Each domestic business trust that is a party to the merger complies with the applicable provisions of Article 11 (§ 13.1-1257 et seq.) of Chapter 14 of Title 13.1;

> 5. Each domestic corporation that is a party to the merger complies with the applicable provisions of Article 12 (§ 13.1-715.1 et seq.) of Chapter 9 of Title 13.1;

6. The merger is permitted by the laws under which each foreign partnership, limited partnership, foreign limited liability company, foreign business trust, and foreign corporation party to the merger is formed, organized or incorporated, and each such foreign partnership, limited partnership, limited liability company, business trust or corporation complies with those laws in effecting the merger; and

7. No partner of a domestic limited partnership that is a party to the merger will, as a result of the merger, become personally liable for the liabilities or obligations of any other person or entity unless that partner approves the plan of merger or otherwise consents to becoming personally liable.

B. The plan of merger shall set forth:

1. The name of each domestic or foreign limited partnership, limited liability company, business trust or corporation planning to merge and the name of the surviving domestic or foreign partnership, limited partnership, limited liability company, business trust or corporation into which each other domestic or foreign partnership, limited partnership, limited liability company, business trust or corporation plans to merge;

2. The name of the state or country under whose law each domestic or foreign partnership, limited partnership, limited liability company, business trust or corporation planning to merge is formed, organized or incorporated and the name of the state or country of formation, organization or incorporation of the surviving domestic or foreign partnership, limited partnership, limited liability company, business trust or corporation;

3. The terms and conditions of the merger; and

4. The manner and basis of converting the partnership interests of each domestic partnership or limited partnership, the membership interests of each domestic limited liability company, the shares of beneficial interest of each domestic business trust, and the shares of each domestic corporation party to the merger into partnership interests, membership interests, shares of beneficial interest, shares, obligations or other securities of the surviving or any other domestic or foreign partnership, limited partnership, limited liability company, business trust, or corporation or into cash or other property in whole or in part, and the manner and basis of converting rights to acquire the partnership interests of each domestic partnership or limited partnership, the membership interests of each domestic limited liability

company, the shares of beneficial interest of each domestic business trust, and the shares of each domestic corporation party to the merger into rights to acquire partnership interests, membership interests, shares of beneficial interest, shares, obligations or other securities of the surviving or any other domestic or foreign partnership, limited partnership, limited liability company, business trust or corporation or into cash or other property in whole or in part.

C. The plan of merger may set forth:

1. If a domestic limited partnership is to be the surviving entity, amendments to the certificate of limited partnership or partnership agreement of that limited partnership;

2. If the merger is not to be effective upon the issuance of the certificate of merger described in subsection C of § 50-73.48:3 by the Commission, the future effective date or time of the merger; and

3. Other provisions relating to the merger.

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No.13-2348    Caption: Lee Graham Shopping Center v. Estate of Diane Z. Kirsch

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  Type-Volume Limitation: Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ]    this brief contains 13,658 [state number of] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]    this brief uses a monospaced typeface and contains_____[state number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  Typeface and Type Style Requirements: A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X ]    this brief has been prepared in a proportionally spaced typeface using MS Word 2007_____[identify word processing program] in 14 Point Times New Roman [identify font size and type style]; or

[ ]    this brief has been prepared in a monospaced typeface using _____[identify word processing program] in _____[identify font size and type style].

January 29, 2014          /s/ Roger A. Hayden, II_____
                          Roger A. Hayden, II, Esq.
                          *Counsel for Appellants*

# United States Court of Appeals
# for the Fourth Circuit

*Lee Graham Shopping Center v Estate of Diane Z. Kirsch*, No. 13-2348

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by PASTERNAK & FIDIS, P.C., Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **January 29, 2014**, Counsel for Appellant has authorized me to electronically file the foregoing **Brief for Appellant** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> KERR STEWART EVANS, JR.
> EVANS STARETT PLC
> 10201 Fairfax Boulevard, Suite 525
> Fairfax, VA  22030
> stewart@evansstarrett.com
> (703) 691-8131
> *Counsel for Appellees*

Additional two paper copies will be mailed to the above counsel on this date.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

January 29, 2014

/s/ John C. Kruesi, Jr.
John C. Kruesi, Jr.
Counsel Press